A. Frederic **LEOPOLD** and Walter A. Keane, as Executors of the Estate of Hans G. M. de Schulthess, Deceased, Appellees.

v.

**UNITED STATES of America,** Appellant.

No. 72–2435.

United States Court of Appeals, Ninth Circuit.

Jan. 2, 1975.

Ernest J. Brown, Atty. (argued), Tax Div. U. S. Dept. of Justice, Washington, D. C., for appellant.

Richard Hungate (argued), of Youngman, Hungate & Leopold, Los Angeles, Cal., for appellees.

## OPINION

Before DUNIWAY, HUFSTEDLER and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

The district court awarded the executors of the estate of Hans G. M. de Schulthess a refund of federal estate taxes, and the government appeals.[1]

The government asserts: (1) that the entire value of the corpus and the undistributed accumulated income of two identical *inter vivos* trusts created by the decedent for the benefit of two of his daughters is includible in his gross estate; and (2) that a payment made by the executors to the guardian of a third daughter was a nondeductible testamentary gift and not a deductible claim against the estate.

The decedent died in an automobile accident in 1962 at the age of 44. He was not married at the time of his death. Two former wives, Amelie de Schulthess and Constance Trevor de Schulthess, and three daughters, Catherine, Celeste and Beatrice Tina survived. Catherine and Celeste were the children of his first wife, Amelie, and Beatrice Tina was the child of his second wife, Constance. All three daughters were minors at the time of his death.

### I. *Trusts for the Benefit of Catherine and Celeste*

The first issue is the includibility in the decedent's gross estate of the entire corpus and accumulated income of two *inter vivos* trusts, one for the primary benefit of his daughter Catherine, and the other for the primary benefit of his daughter Celeste.

The relevant portions of the trust for Catherine are quoted below. The trust for Celeste was identical except for the difference in names. Decedent designated himself and a friend as trustees of both trusts.

"FIRST: The Trustees shall receive, hold, manage, sell, exchange, invest and reinvest such property and every part thereof in the manner hereinafter specified, and shall collect, recover and receive the rents, issues, interest and income thereof, hereinafter called 'income' and, after deducting such expenses in connection with the administration of the trust as, in the opinion of the Trustees, are properly payable from income, shall pay the balance of the said income to CATHERINE J. H. DE SCHULTHESS, the daughter of the Donor, during the term of her natural life, at such intervals as the Trustees, in their sole discretion, may determine. During the minority of the said CATHERINE J. H. DE SCHULTHESS the said income may be accumulated or paid to AMELIE DE SCHULTHESS, the mother of the said CATHERINE J. H. DE SCHULTHESS, or to the guardian of CATHERINE J. H. DE SCHULTHESS, for the support, edu-

---

1. The findings and conclusions of the district court may be found at 29 A.F.T.R.2d 1518 (C.D. Cal.1972).

cation, maintenance and general welfare of the said infant, but such decision to accumulate or pay the income during such minority is to be made solely in the uncontrolled discretion of the Trustees. Any income accumulated when the said CATHERINE J. H. DE SCHULTHESS shall attain the age of twenty-one (21) years shall be paid over to her at that time.

"SECOND: Upon the death of the said CATHERINE J. H. DE SCHULTHESS, this trust shall terminate, and the principal thereof shall then be paid and distributed to the issue of the said CATHERINE J. H. DE SCHULTHESS, in equal shares per stirpes and not per capita. If the said CATHERINE J. H. DE SCHULTHESS shall die leaving no issue then the trust principal shall be paid and distributed to her sister  *  *  *.

"THIRD: The Donor hereby authorizes and empowers the Trustees at any time during the continuance of the trust to pay to the said CATHERINE J. H. DE SCHULTHESS, or to apply for her benefit out of the principal of the trust, such amounts, if any, as the Trustees may deem necessary or proper, and their judgment with respect to the time and amount of any such payments of principal shall be final and conclusive beyond any dispute or appeal. Any payment or payments of principal under this Article may only be made in the event both Trustees hereunder concur in such payment or payments, and such payment or payments may in no manner be applied, directly or indirectly, to the benefit of the Donor.

"  *  *  *.

"FOURTEENTH: In case of the death, resignation, removal, disability or inability (for any reason whatsoever) further to act of any Trustee hereunder, the surviving or remaining Trustee shall have the right to appoint a successor Trustee from time to time, such successor Trustee, upon executing a duly acknowledged written

acceptance of the trusteeship, to be and become vested with all the estate, title, authorities, rights, powers, duties, privileges, immunities and discretions granted to his predecessors, with like effect as if originally named as Trustee hereunder.

"  *  *  *.

"EIGHTEENTH: All questions pertaining to the validity, construction and administration of the trust shall be determined in accordance with the laws of the State of New Jersey.

"  *  *  *."

Each trust was created in December 1956 with a corpus of approximately $641,000. Prior to the decedent's death each trust earned approximately $63,000 in net income, $37,000 of which was paid to each beneficiary in five annual installments and $26,000 of which was allowed to accumulate in the trust.

On decedent's federal estate tax return, the trusts were identified, but no portion of either was included in the gross estate. The Commissioner determined that the entire corpus and undistributed accumulated income of each trust were includible under sections 2036 and 2038 of the Internal Revenue Code, 26 U.S.C. §§ 2036, 2038, and asserted a deficiency in estate taxes. The district court, rejecting part of the Commissioner's determination, held that none of the accumulated income and only the actuarial value of the remainder interests (21.-187 per cent of the corpus of Catherine's trust and 20.021 per cent of the corpus of Celeste's) was includible in the gross estate.

The appeal asserts the Commissioner's original position. The taxpayers have not cross-appealed from the district court's holding that the actuarial value of the remainder interests is includible, and that issue is not before us.

Section 2038(a)(1) of the Code provides that there shall be included in a decedent's gross estate all property gratuitously transferred by the decedent "where the enjoyment thereof was subject at the date of his death to any

change through the exercise of a power * * * by the decedent alone or by the decedent in conjunction with any other person * * * to alter, amend, revoke, or terminate * * *." Similarly, section 2036(a)(2), which often overlaps section 2038 in its coverage, requires the inclusion of all gratuitously transferred property over which the decedent has retained "the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy * * * the income therefrom."

The government contends that the powers of decedent and his co-trustee to distribute principal to decedent's daughters whenever they deemed such payments to be "necessary and proper" and to accumulate trust income or to pay it out in their "uncontrolled discretion" for the girls' "support, education, maintenance and general welfare" constituted a power "to alter, amend, revoke, or terminate" within the meaning of section 2038. The government also contends that these powers gave the decedent the ability to shift income from his daughters to their heirs and, thus, to designate the persons who would receive the enjoyment of the property within the meaning of section 2036(a)(2).

▅ The district court concluded, and the taxpayers do not dispute, that since the decedent had the power to pay out principal as he deemed "necessary and proper," he retained sufficient control over the remainder interest of each trust to justify its inclusion in his gross estate. However, the court also held that the decedent had retained no power to affect the beneficial enjoyment of the income of either trust, except to the extent that such power was limited by an ascertainable, external, objective standard. Although the question is a close one, we agree with the district court that the standard was ascertainable. The Court of Appeals for the First Circuit has said:

"The trust provision which is uniformly held to provide an ascertaina-

ble standard is one which, though variously expressed, authorizes such distributions as may be needed to continue the beneficiary's accustomed way of life * * *" Old Colony Trust Co. v. United States, 423 F.2d 601, 604 (1st Cir. 1970).

The provision at issue here, authorizing payments of income for the "support, education, maintenance and general welfare" of decedent's daughters, requires the trustees to maintain the daughters in their accustomed way of life and, hence, provides a sufficiently objective standard. *See* Estate of Ford v. Commissioner, 450 F.2d 878 (2d Cir. 1971), aff'g 53 T.C. 114 (1969); United States v. Powell, 307 F.2d 821, 826–828 (10th Cir. 1962); Jennings v. Smith, 161 F.2d 74 (2d Cir. 1947); C. Lowndes, R. Kramer & J. McCord, Federal Estate and Gift Taxes, § 8.9 at 157–58. *See generally* Note, The Doctrine of External Standards Under Sections 2036(a)(2) *and* 2038, 52 Minn.L.Rev. 1071 (1968).

From this conclusion it follows that the present value of a portion of the income interests was properly excluded from the decedent's gross estate. At the time of decedent's death, the daughters had an enforceable right to enjoy that portion of the trust income necessary to maintain them in their accustomed way of life. The government has elsewhere conceded the propriety of excluding from the gross estate the present value of a fixed, indefeasible income right even though the decedent retained the power to pay corpus prematurely to the income beneficiary. *See* Walter v. United States, 295 F.2d 720 (6th Cir. 1961). *See also* Revenue Ruling 70–513, 1970–72 Cum.Bull. 194, which holds that under section 2038 only the value of the remainder interest, and not the entire corpus, of a trust is includible in the decedent's gross estate where the enjoyment of a life estate is vested in the beneficiary and is not subject to reduction through exercise of the decedent's reserved power to terminate the trust and to pay over the corpus to the life beneficiary.

But the daughters here had an enforceable right to enjoy currently only a *portion* of the full income stream prior to reaching twenty-one years of age—*i. e.*, that amount necessary to maintain them in their accustomed way of life. With respect to the remaining income, the decedent had two options: he could either allow that income to accumulate until the girls reached 21, or he could provide for present enjoyment of the income by paying over the corpus with its full income-generating capacity. Thus, the decedent possessed a degree of control over the enjoyment of that segment of the future income he was not required to distribute currently which precludes exclusion of its actuarial value from his gross estate. *See* United States v. O'Malley, 383 U.S. 627, 631, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966); Lobor v. United States, 346 U.S. 335, 337, 74 S.Ct. 98, 98 L.Ed. 15 (1953).

The government argues that under Estate of Varian v. Commissioner, 396 F.2d 753 (9th Cir. 1968), aff'g 47 T.C. 34 (1966), the entire corpus of the trusts must be included in the gross estate. *Varian* does not compel such a result. In *Varian*, the trust instrument provided:

"3. *Distribution of Income and Principal.*

"(a) The Trustees shall pay to or apply for the benefit of the child such sums as may in the Trustees' discretion be necessary for the child's support, maintenance and education.

"(b) In the discretion of Trustees, the principal and income or any portion thereof, may be payable to the child at any time before attaining the age of 21 years.

" \* \* \*." 47 T.C. at 38.

The Tax Court held that the second clause conferred a completely unrestricted power over the distribution of income and principal which destroyed whatever objective standard may have been con-

tained in the first clause. 47 T.C. at 43–44. We are presented with trust provisions which are substantially similar to those in *Varian* in all significant respects but one: Here, the unrestricted power extends only to the payment of principal. We recognize, of course, that in terms of economic effect the addition of an unrestricted power over a future income stream adds very little to the discretion possessed by a trustee with an unrestricted power over the principal.

But in determining whether an unrestricted power in one provision of a trust destroys an ascertainable income standard in another trust provision, we refuse to extend the logic of *Varian* to the situation where the unfettered power applies only to payment of principal. To do so would create conflict with the concededly [2] proper principle that the present value of a fixed income right is excludible where the decedent retains a discretionary power to pay the corpus prematurely to the income beneficiary.

The amount of previously accumulated income was properly excluded. Once the decision had been made to accumulate part of the income, this accumulation was placed beyond the reach of the trustees. The accumulated income would be paid to the children when they reached 21. Although the trustees could pay out the principal early, they could not prematurely distribute the accumulated income. Unlike the accumulated income held taxable in United States v. O'Malley, the accumulated income here did not become part of the trust principal and was not subject to the powers decedent reserved over the principal.

We hold, then, that under sections 2036(a)(2) and 2038(a)(1) the decedent's reserved power to distribute the principal of the trusts at any time requires the inclusion of the corpus of each trust, reduced by the actuarial value of that segment of the future income stream which the decedent would be ob-

2. *See* Walter v. United States, 295 F.2d 720 (6th Cir. 1961); Rev.Rul. 70–513, 1970–72 Cum. Bull. 194.

ligated to distribute currently to his daughters.[3] We further hold that the exclusion of previously accumulated income was proper. The case must be remanded to the district court for a factual determination of the amount of the includible sum.

## II. *Payment to Guardian of Beatrice Tina*

The second issue on this appeal involves the deductibility for estate-tax purposes of a $264,000 payment by the executors of decedent's estate to Constance Trevor de Schulthess, as guardian for her daughter Beatrice Tina.

The decedent and his second wife, Constance, were married on February 2, 1958. On August 13, 1958, their daughter, Beatrice Tina, was born. One year later Constance filed an action for divorce. Following extensive negotiations, the decedent and Constance entered into a property-settlement agreement, one clause of which provided as follows:

"12A. *Testamentary Gift to Child.* —The Husband shall promptly make and execute and keep in effect until his death a Will under which he shall devise and bequeath property to Beatrice Tina de Schulthess in an amount at least equal to the sum of the following:

(a) $250,000, and

(b) the greater of:

(i) the difference between an amount equal to the product of $6,000.00 multiplied by the number of January 15ths since the date of this agreement and the aggregate of the amounts contributed to the trust estates referred to in Paragraphs 11 and 12 of this agreement, or

(ii) the difference between $54,-000.00 and the aggregate of the amounts contributed to the trust estates referred to in Paragraphs 11 and 12 of this agreement.

The provisions contained in this Paragraph 12A are in addition to those contained in any and all other paragraphs hereof."

This property-settlement agreement was approved and incorporated into an interlocutory judgment of divorce entered on January 17, 1961.

Although the decedent did make a bequest to Beatrice Tina, the amount was uncertain. Constance filed a creditor's claim for $273,900 based on the quoted clause of the property-settlement agreement. The executors rejected the claim in part, but after Constance had filed suit in state court, the matter was settled, and $264,000 was paid to Constance in satisfaction of the claim filed on behalf of Beatrice Tina.

In their claim for refund, the taxpayers contended that this payment was a deductible claim against the estate under section 2053(a)(3) of the Internal Revenue Code, 26 U.S.C. § 2053(a)(3). The government replied that although Beatrice Tina had an enforceable claim under local law, the claim was not supported by adequate and full consideration in money or money's worth, as required by section 2053(c)(1)(A). *See* Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119 (1938). The district court agreed with the taxpayers, finding that the $264,000 payment was based upon a promise by the decedent contracted bona fide and for an adequate and full consideration, and concluding that the payment was deductible.

3. The government also contends that these trusts are includible in decedent's gross estate under section 2036(a)(1), 26 U.S.C. § 2036(a)(1), because the decedent retained the right to apply trust income in satisfaction of his legal obligation to support his daughters. *See* Treas.Reg. § 20.2036–1(b)(2) (1960). However, this issue was never raised at the time of audit or in the district court, but only for the first time on this appeal. Since this issue presents genuine factual questions, we decline to consider it now. *See* Hormel v. Helvering, 312 U.S. 552, 558–559, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 497–498, 57 S.Ct. 569, 81 L.Ed. 755 (1937); MacRae v. Commissioner, 294 F.2d 56, 59 (9th Cir. 1961), cert. denied, 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388 (1962).

Section 2053(a)(3) does authorize deductions from the gross estate for amounts paid to satisfy "claims against the estate." However, subsection (c)(1)(A) further provides that deductions "shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth * * *." One purpose of this limitation is to prevent testators from depleting their estates by transforming bequests to the natural objects of their bounty into deductible claims. United States v. Stapf, 375 U.S. 118, 130–133, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963).

We begin our analysis by looking to two decisions of this court construing an analogous provision of the Internal Revenue Code.[4] In United States v. Past, 347 F.2d 7 (9th Cir. 1965), we scrutinized a property-settlement agreement made in anticipation of divorce. There the husband and wife jointly transferred certain community property into a trust, with the income payable to the wife for her life and the remainder payable to the couple's children. When the wife died, the Commissioner included the entire corpus of the trust in her gross estate. The district court held instead that none of the property was includible because the decedent had received adequate and full consideration from her husband for making the transfer. We reversed, holding that the fact that the transfer was part of a property-settlement agreement incident to a divorce was insufficient in itself to make the transfer one for an adequate and full consideration. The value of what the decedent received must be measured against the value of what she transferred. Since in Past the decedent received less than she transferred, we held that the trust property was not excludible from federal estate tax upon her death.

In Estate of Haskins v. United States, 357 F.2d 492 (9th Cir. 1966), we again were faced with a property-settlement agreement incident to a divorce. There, as part of the agreement, the husband placed money in a trust in which he reserved a life estate with the remainder to his children. We affirmed a district court decision holding that the corpus of this trust was includible in the decedent's gross estate. We noted that both parents were devoted to their children and keenly mindful of parental obligation. Testamentary provisions for the care of children, even though required by a property-settlement agreement, were not necessarily made for monetary consideration but could be viewed as a form of estate planning by the couple.

The government contends that Haskins requires us to reverse the judgment of the district court holding that the payment to Constance was a deductible claim against the estate. However, in Haskins the district court specifically found that there was no consideration for the transfer; here, the district court found that there was. Moreover, Haskins did not establish a per-se rule that a testamentary provision for one's own children could never be made for monetary consideration.

In Hartshorne v. Commissioner, 402 F.2d 592, 594 n. 2 (2d Cir. 1968), the government did take the position that a bequest to one's own children can never be a "claim against the estate" within the meaning of section 2053 because such a bequest is simply an agreement to make a testamentary disposition to persons who are the natural objects of one's bounty. The Court of Appeals for the Second Circuit rejected this absolute position, and so do we. The Second Circuit noted, in language which conforms to the test laid down in Past and Haskins:

" * * * Under exceptional circumstances * * * it may be that

---

4. Although these two cases both involve *inter vivos* transfers and therefore were decided under section 2043 rather than section 2053, the taxpayers and the government agree that they are still in point, since the two sections are similar in purpose and language. *See* Hartshorne v. Commissioner, 402 F.2d 592, 595 n. 4 (2d Cir. 1968).

a claim by someone who might otherwise inherit from the decedent should be deductible under section 2053. If the claim is not simply a subterfuge for a nondeductible legacy, if the claim is supported by 'adequate and full consideration,' and if the consideration is a non-zero sum which augmented the decedent's estate, then it would seem that the deduction should be allowed. Whether or not a particular claim is deductible, then, will depend on the facts in each case." 402 F.2d at 594–595 n. 2.

Constance's claim on behalf of Beatrice Tina meets this standard. The case presents the "exceptional circumstances" to which the Second Circuit alluded.

█ The testimony before the district court was sharply conflicting on the question whether the decedent's agreement to make the bequest to Beatrice Tina was bargained for or merely gratuitous. Because the taxpayers prevailed below, this court must view the evidence in the light most favorable to them. United States v. Disney, 413 F.2d 783, 787 n. 2 (9th Cir. 1969). Viewing the evidence in this light, we affirm as not clearly erroneous the district court's finding that decedent's promise was contracted bona fide and for an adequate and full consideration.

Decedent's will suggests that Beatrice Tina might not necessarily have been a natural object of the decedent's bounty. His will established his first wife and her daughters as the residuary beneficiaries of his estate; by contrast, nothing was left to Constance and no more to Beatrice Tina than was required by the property-settlement agreement. His attorney testified that the decedent knew that his first two daughters' share of the residuary estate would be worth considerably more than the amount promised to Beatrice Tina. Moreover, these two daughters already had the *inter vivos* trusts which are the subject of the first issue on this appeal.

The record strongly suggests that the decedent and Constance were not equally concerned with the financial welfare of their daughter, and that Constance felt she had to wrench from her husband— or at least from her husband's lawyers —the promise to leave a bequest to Beatrice Tina. She feared that because of the circumstances concerning the marriage and the birth of their daughter, her child might not be treated equally with the children of the first marriage. The decedent's attorney testified that the decedent did give a preference in financial matters to his first two daughters, in part because he felt that Constance was more self-assertive than his first wife and would always manage to provide for her child.

Constance's initial demands for support payments for herself were within the range of California court awards in similar cases. Nonetheless, she accepted a substantially smaller sum, partly in consideration for her husband's promise to bequeath more than $250,000 to their daughter. Constance apparently felt that she could spend her support payments more freely and would not have to set aside part for her estate if she knew that her child would be taken care of in the event of her ex-husband's death. Thus, by accepting reduced alimony, Constance paid for her husband's promise to leave money to their daughter; in effect, she diverted to her daughter that consideration which otherwise would have flowed to herself. Although the property-settlement agreement might have spelled out more precisely what Constance relinquished in exchange for her husband's promise to leave their daughter a bequest, the record supports the finding that the promise was contracted for in good faith for value which augmented the decedent's estate.

The district court's holding that only the actuarial value of the remainder interests in the trusts for Celeste and Catherine was includible in the gross estate is reversed. The remainder of the district court's holding is affirmed.

The district court's judgment is vacated and remanded for entry of a modified judgment consistent with this opinion. Neither party shall recover costs.