**Betsy Carolyn TURNER, Independent Executrix of the Estate of Sally C. Jackson, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A.3:03–CV–0294–G.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 30, 2004.

Order Amending Opinion Feb. 11, 2004.

Clifton Trigg Hutchinson, Hughes & Luce, Dallas, TX, for Plaintiff.

Michelle C. Johns, U.S. Department of Justice, Dallas, TX, for Defendant.

### MEMORANDUM ORDER

FISH, Chief Judge.

Before the court are the cross-motions for summary judgment of the plaintiff Betsy Carolyn Turner ("Turner"), executrix of the estate of Sally C. Jackson ("decedent"), and the defendant United States of America. For the reasons stated below, Turner's motion for summary judgment is granted and the United States' motion is denied.

### I. BACKGROUND

There are no disputed issues of material fact. Decedent died on January 7, 1997. Brief in Support of Plaintiff's Motion for Summary Judgment at 1, 3 ("Plaintiff's Motion"); United States' Memorandum of Law in Support of its Motion for Summary Judgment at 2 ("Defendant's Motion"). Pursuant to decedent's Last Will and Testament (the "Will"), Turner was appointed independent executrix of the estate. *See* Will ¶ 6.2, *attached to* Appendix of Exhibits in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Appendix") as Tab B. The Will was admitted to probate and letters testamentary were issued to Turner on February 3, 1997. *See* Order Admitting Will to Probate and Granting Letters Testamentary, *attached to* Plaintiff's Appendix as Tab C.

Decedent's Will made a pecuniary bequest of ten million dollars ($10,000,000) to Juliette Fowler Homes, Inc. ("Fowler Homes"). Will ¶ 1.2. Decedent's bequest to Fowler Homes was, however, dependent upon Fowler Homes' status as "an organization described in section 2055(a) of the Internal Revenue Code" ["IRC"] [ *i.e.*, a charitable organization] at the time of [her] death." Will ¶ 1.2. Before funding the Fowler Homes' bequest, Turner awaited receipt of a "closing letter" from the Internal Revenue Service ("IRS"). Plaintiff's Motion at 3–4. Turner defines an estate tax closing letter as:

> a letter from the IRS stating that unless certain narrowly defined circumstances arise, such as the discovery of fraud, the IRS will not reopen the estate and the executrix can be assured that issues such as the payment of estate tax and valuation of estate assets have been fully resolved, thus making it safe to distribute the assets of the estate to the beneficiaries.

Plaintiff's Motion at 1 n. 1.[1] *See also generally* Federal Estate and Generation–Skipping Transfer Tax Closing Letter, *attached to* Plaintiff's Appendix as Tab H.

Pursuant to § 378B(f) of the Texas Probate Code, statutory interest began to accrue at an annual rate of six (6) percent on decedent's bequest to Fowler Homes one

---

1. The United States does not contest this definition, and the court has found no authority to the contrary.

year after letters testamentary were issued to Turner. Plaintiff's Motion at 4; Defendant's Motion at 2.

On October 2, 1997, Turner filed a Form 4768, Application for Extension of Time to File a Return and/or Pay U.S. Estate (and Generation–Skipping Transfer) Taxes, seeking an extension of time to file a Form 706, United States Estate (and Generation–Skipping Transfer) Tax Return (the "Estate Tax Return"). *See generally* Form 4768, *attached to* Plaintiff's Appendix as Tab D; *see also* Plaintiff's Motion at 4; Defendant's Motion at 2. A payment of $6,303,283.68 in estimated taxes was submitted along with the extension application. Plaintiff's Motion at 4; Defendant's Motion at 2.

On March 30, 1998, Turner filed the Estate Tax Return and made an additional payment of $13,383.26. *See* Estate Tax Return, *attached to* Plaintiff's Appendix as Tab F; *see also* Plaintiff's Motion at 4; Defendant's Motion at 2. Schedule O of the Estate Tax Return reflected a charitable deduction equal to the amount of the bequest to Fowler Homes, or $10,000,000. *See* Tab F, Plaintiff's Appendix at 36, 81; *see also* Plaintiff's Motion at 4; Defendant's Motion at 2. Turner did not, however, claim an estate tax deduction for payment of statutory interest on the March 30, 1998 Estate Tax Return. Plaintiff's Motion at 5. Turner did not deduct the statutory interest expense on the estate's income tax return either,[2] see *id.* at 14; *see also* Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response") at 6; Defendant's Motion at 8–9, even though the estate

earned post-death interest income. *See* Defendant's Motion at 3.

On September 17, 1999, Turner was notified that the estate had been selected for audit by the IRS Estate and Gift Tax Examination Branch. Plaintiff's Motion at 6; Defendant's Motion at 2. In conducting this audit, the IRS requested any evidence that Turner had collected regarding the exempt status of Fowler Homes. *See* Letter to Ms. Christine Martinez, Estate Tax Division of IRS, from Vester T. Hughes, Jr. (Sept. 23, 1999), *attached to* Plaintiff's Appendix as Tab G; Plaintiff's Motion at 6–7. Apparently satisfied with its investigation of the estate, the IRS issued a closing letter to Turner on October 19, 1999. *See* Federal Estate and Generation–Skipping Transfer Tax Closing Letter, *attached to* Plaintiff's Appendix as Tab H; *see also* Plaintiff's Motion at 7; Defendant's Motion at 2.

On November 5, 1999, Turner issued a check to Fowler homes in the amount of $11,052,054.79, reflecting the bequest of $10,000,000 plus statutory interest in the amount of $1,052,054.79. *See* Letter from Vester T. Hughes, Jr. to Ms. Kay Ellis of Fowler Homes (Nov. 5, 1999), *attached to* Plaintiff's Appendix as Tab I; *see also* Plaintiff's Motion at 7; Defendant's Motion at 2.

On September 13, 2000, the estate filed a Form 843, Claim for Refund and Request for Abatement, with the IRS, seeking a $450,108.08 refund of estate taxes. *See* Form 843, *attached to* Plaintiff's Appendix as Tab J; *see also* Plaintiff's Motion at 7; Defendant's Motion at 2. In her claim for a refund, Turner sought an es-

---

**2.** To qualify as a deductible administration expense on an estate tax return, an expense cannot be deducted on the estate's income tax return. *See* 26 U.S.C. § 641(b) (stating that estates are generally taxed in the same manner as individuals); 26 U.S.C. § 642(g) (disallowing double deductions for amounts allowable under IRC § 2053, but providing a mechanism by which an executor may choose whether to claim a deduction on the estate tax return or the income tax return).

tate tax deduction of $1,052,054.79 in statutory interest paid to Fowler Homes— whether as an administration expense under section 2053 of the IRC, or as a charitable distribution under section 2055(a) of the IRC. *See* Plaintiff's Motion at 2; Plaintiff's Response at 1; Defendant's Motion at 2–3.

The IRS has rejected Turner's claim for refund, *see* Letter from IRS to Vester T. Hughes, Jr. (Feb. 12, 2001), *attached to* Plaintiff's Appendix as Tab L, and argues that Turner is not entitled to deduct the statutory interest expense on her estate tax return. Defendant's Motion at 3. Instead, the United States submits that the interest expense should be deducted on the estate's income return. *Id.*

Dissatisfied with the IRS's position,[3] Turner instituted this suit to obtain an estate tax refund of $450,108.08 plus pre- and post-judgment interest. *See* Plaintiff's Motion at 16; Plaintiff's Response at 8.

## II. *ANALYSIS*

### A. *Evidentiary Burdens on Motion for Summary Judgment*

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[4] The movant makes such a showing by informing the court of the basis of her motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]he substantive law will identi-

fy which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

While all of the evidence must be viewed in a light most favorable to the nonmovant, *id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the

---

**3.** The court notes that the parties are contesting, in essence, whether Turner may exploit the difference between the estate and income tax rates.

**4.** The disposition of a case through summary judgment "reinforces the purpose of the

Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986).

motion's opponent fails to establish the existence of an element essential to its case and as to which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

B. *Deductions for Administration Expenses Under IRC § 2053*

■ For purposes of calculating the amount of federal estate tax due, section 2053 of the IRC states that the value of the taxable estate shall be determined by deducting certain items, including administration expenses, from the gross estate. 26 U.S.C. § 2053. While the applicable statute does not define "administration expenses," see *id.* § 2053(a), the applicable Treasury Regulation provides that administration expenses

> are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate . . . . The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries . . . .

Treas. Reg. § 20.2053–3(a). See also *Pitner v. United States,* 388 F.2d 651, 660 (5th Cir.1967) (upholding the limits Treas. Reg. § 20.2053–3(a) places on deductible administration expenses). The burden rests on the estate to show its right to a claimed deduction or exemption. *Interstate Transit Lines v. Commissioner of Internal Revenue,* 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943).

■ In this case, the court must determine whether the statutory interest expense incurred by Turner is deductible as an administration expense. Without this keystone, Turner's entire IRC § 2053 argument must fail. An expense is deductible as an "administration expense," pursuant to IRC § 2053(a) and Treas. Reg. § 20.2053–3(a), if the following criteria are satisfied: (1) the expense is incurred in the administration of the decedent's estate, (2)

the expense is actually and necessarily incurred, and (3) the expense is allowable by the laws of the jurisdiction under which the estate is being administered. Below, the court applies these criteria to the facts of this case. While there is a paucity of cases directly on point, the parties base their arguments on a number of related decisions.

1. *An Expense Incurred in the Administration of Decedent's Estate?*

■ The first criterion permits estate tax deductions for "expenses . . . incurred in the administration of the decedent's estate . . ." Treas. Reg. § 20.2053–3(a). The court's task is to assure that the claimed administration expenses are of the "type intended to be deductible," *United States v. Stapf,* 375 U.S. 118, 130, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), which "are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries . . ." Treas. Reg. § 20.2053–3(a). The applicable Treasury Regulation provides that expenses facilitating the "distribution of property to the persons entitled to it" are deductible administration expenses. *Id.;* see also *Pitner,* 388 F.2d at 660.

Turner asserts that a "state-mandated payment of interest to a pecuniary legatee has the same character for federal tax purposes as interest paid to any other creditor," Plaintiff's Response at 2, and that "interest payments made to a creditor are deductible under IRC § 2053." Plaintiff's Motion at 10. In contrast, the United States argues that Turner's statutory interest payment is not an administration expense, but rather an allocation of estate income to a beneficiary. *See* Defendant's Motion at 7. Whatever the merit of either parties' arguments, the court need not ad-

dress whether statutory interest qualifies generally as an expense of administration.

Here, the issue is a simple one. In this specific case, the decedent's Will mandated that Fowler Homes possess tax-exempt status as a charitable organization before the bequest to it was funded. *See* Will ¶ 1.2. In discharging her duties as personal representative of the estate, therefore, Turner was specifically required to ascertain Fowler Homes' status. Any expenses, including statutory interest expenses, incurred by Turner in making this determination—if actual, necessary, and allowable under Texas law—were thus incurred in the administration of the decedent's estate. The statutory interest expenses at issue thus "attend[ed] the settlement of [the] estate" and were incurred in the "distribution of property to the person[ ] entitled to it," *i.e.,* Fowler Homes. *See* Treas. Reg. § 20.2053–3(a).

### 2. *An Expense Actually and Necessarily Incurred?*

■ The second criterion permits estate tax deductions that are "actually and necessarily incurred ..." *Id.* Administration expenses, however, will not "be allowed for a longer period than the executor is reasonably required to retain the property." *Id.* § 20.2053–3(d)(1).

Turner submits that she "properly withheld funding the bequest to Fowler Homes ... until a closing letter for the Estate was received and an audit of the Estate was completed." Plaintiff's Motion at 2. Once she confirmed—two years and nine months after the decedent's death—that Fowler Homes was "an organization described in section 2055" of the IRC, Turner asserts that she "promptly paid" the bequest. *Id.* Turner concludes, therefore, "the statutory interest of $1,052,054.79 was

a proper administration expense actually and necessarily incurred in the prudent administration of the Estate, and is thus deductible under IRC § 2053." *Id.* In response, the United States contends that "the payment of interest was not necessarily incurred in the administration of the estate under § 2053(a)." Defendant's Motion at 3. The United States submits that Turner, imprudently and unnecessarily, "chose to wait almost 2½ years to make the payment to [Fowler] Homes." *Id.* at 7.

That the interest expense was *actually* incurred by the estate is not disputed. Turner paid Fowler Homes an interest expense of $1,052,054.79. *See* Tab I, Plaintiff's Appendix at 98–99; *see also* Plaintiff's Motion at 7; Defendant's Motion at 2. The disputed issue is whether the statutory interest expense incurred as the result of Turner's delay in funding the Fowler Homes' bequest was incurred necessarily. The court concludes that the expense was necessary.

The IRC exempts certain organizations from taxation, including those organized and operated for charitable purposes. 26 U.S.C. § 501(a), (c)(3). Ordinarily, charitable organizations seeking tax-exempt status, including those described in IRC § 2055(a), are required to apply to the IRS for an advance determination that they meet the requirements of IRC § 501(c)(3). *Id.* § 508(a).[5] The IRS maintains a periodically updated "Publication No. 78," in which it lists all organizations that have received a ruling or determination letter confirming the deductibility of contributions made to them. *See* Examination of Returns and Claims for Refund, Credit or Abatement; Determination of Correct Tax Liability, Rev. Proc. 82–39, 1982–1 C.B. 759, §§ 2.01, 2.03, 1982 WL

---

**5.** After an organization seeking recognition of tax-exempt status files this application, the IRS issues a determination letter or ruling confirming (or denying) the organization's tax-exempt status. *See* Treas. Reg. § 601.201(n)(I)(ii).

196338 (Jul. 6, 1982). The effect of obtaining a determination letter and of being listed in Publication No. 78 is that charitable donors, including estates, are given advance assurance that their contributions will be deductible. See *id.* § 2.01. A subordinate organization covered by a group exemption letter need not obtain a determination letter of its own and will not be listed in Publication No. 78. Treas. Reg. § 1.508–1(a)(3)(i)(c).

Fowler Homes, as a subordinate organization, claims exempt status by virtue of its affiliation with a church: the Christian Church (Disciples of Christ). *See* Plaintiff's Motion at 6. Turner received from Fowler Homes three documents evidencing Fowler Homes' relationship with the Christian Church. First, Turner received a letter entitled "Certification" from a Minister of the Christian Church stating that Fowler Homes was then "an integral part of and identified with" the Christian Church and, therefore, included in the church's group tax-exemption under Publication 78. *See* Letter of Certification (Dec. 27, 1989), *attached to* Appendix to the United States' Motion for Summary Judgment ("Defendant's Appendix") as Exhibit 4B (the "1989 letter"). Second, Turner received from Fowler Homes a copy of a page from the Christian Church's 1998 Year Book & Directory that identified Fowler Homes as an institution related to the church. *See* Year Book & Directory (1998) (the "directory"), *attached to* Defendant's Appendix as Exhibit 4C. Third, Fowler Homes produced to Turner a "Certificate" from the President of Fowler Homes, dated April 12, 1999, and an accompanying copy of Publication No. 78, together showing that the Christian Church held a group exemption letter and that contributions to subordinate units covered by its group exemption are deductible, even though the subordinate units are not separately listed. *See* Certificate of Tax–Exempt Status of Juliette Fowler Homes Inc. (Apr. 12, 1999) (the "Certificate"), *attached to* Defendant's Appendix as Exhibit 4A.

The 1989 letter, the directory, and even the "Certificate" and attached Publication No. 78, are devoid of any reliable, specific information concerning the tax-exempt status of Fowler Homes. *See generally* Plaintiff's Response at 5–6. Both the 1989 letter, stating that Fowler Homes was an "integral part" of the Christian church, and the directory, listing Fowler Homes' contact information under the Christian Church umbrella, provided only imprecise evidence of a general affiliation. The Certificate and attached Publication No. 78, showing the *Christian Church's* group exemption status, did not establish any link between Fowler Homes and the Christian Church. Moreover, the Certificate, although a starting point for determining Fowler Homes' tax-exempt status, was not executed until April 1999. Given the size of the bequest, coupled with the explicit requirement in the decedent's Will that Fowler Homes be a charitable organization, Turner prudently determined that the above-described evidence was not reliable enough to permit her to fund the bequest.[6]

In addition, Turner prudently withheld funding the bequest until the estate

---

**6.** Fowler Homes could have requested from the IRS a legal ruling or determination letter as to its status for tax purposes. *See* Treas. Reg. § 601.201(a)(1) ("It is the practice of the Internal Revenue Service to answer inquiries of individuals and organizations, whenever appropriate in the interest of sound tax administration, as to their status for tax purposes and as to the tax effects of their acts or transactions."). A legal ruling or determination letter from the IRS (the final arbiter of an organization's tax-exempt status), like a closing letter, would have provided Turner the assurance she needed to fund Fowler Homes' bequest.

received an IRS closing letter and resolved any estate tax audit. Receipt of a closing letter prior to distributing estate assets is, in the general practice of estate administration, not an imprudent exercise of an executor's fiduciary duties. *See* IRS Field Service Advisory, 1997 WL 33313776 (Sept. 5, 1997) ("[A] reasonably, prudent person would not make distributions until they were in receipt of an estate tax closing letter . . ."). An estate tax closing letter from the IRS provides assurance to an executrix that issues such as the payment of estate tax and valuation of estate assets have been fully resolved, thus making it safe to distribute the assets of the estate to the beneficiaries. See, *e.g., Estate of Cameron Bommer v. Commissioner of Internal Revenue*, 69 T.C.M. (CCH) 2541 at n. 9, 1995 WL 258415 (U.S.Tax Ct.1995) ("[C]losing letters are normally issued in estate cases to provide a measure of assurance that the estate's Federal tax liabilities have been satisfied and, thus, to permit the closing of the probate estate at the local level."). Professors Richard Schmalbeck & Jay A. Soled observe the following:

> Many executors choose not to make estate distributions until they receive a closing letter from the Service that verifies the accuracy of the estate tax return. Because estate tax returns are not due until nine months after the death of a taxpayer (fifteen months if the executors file for an extension), and because the IRS usually does not issue an estate tax closing letter until six

months after submission of the return, this precautionary stance [taken by executors often means that estates are kept open an extra] fifteen months to two years from the date of the decedent's death.

Richard Schmalbeck & Jay A. Soled, *Many Unhappy Returns: Estate Tax Returns of Married Decedents*, 21 Va. Tax Rev. 361, 366 (2002) (footnotes omitted). Turner prudently followed this practice but promptly paid the Fowler Homes' bequest two weeks after receiving the IRS closing letter, albeit 2½ years after the decedent's death.[7] *See* Plaintiff's Motion at 7; Defendant's Motion at 2. A closing letter was particularly important in this case because the Will itself required that Turner determine whether Fowler Homes qualified as "an organization described in [IRC] § 2055(a)." Will ¶ 1.2. In light of these circumstances, the court is satisfied that Turner was properly acting within her fiduciary duty to the beneficiaries of the Will by awaiting the receipt of a closing letter.

The court concludes, therefore, that Turner's statutory interest expense was "necessarily incurred," Treas. Reg. § 20.2053–3(a), and was not incurred "for a longer period than [Turner was] reasonably required to retain the property." *Id.* § 20.2053–3(d)(1).

### 3. An Expense Allowable Under Texas Law?

■ The third criterion permits deductions for administration and certain other

---

**7.** Turner cites *Leopold v. United States*, 1972 WL 422 (C.D.Cal.1972), *aff'd in part, rev'd in part*, 510 F.2d 617 (9th Cir.1975), *Action on Dec.*, 1974–416, 1974 WL 36357 (Aug. 27, 1974), as support for her assertion that she is entitled a deduction under IRC § 2053. *See* Plaintiff's Motion at 12–13. However, neither the *Leopold* court nor the IRS (in the Action on Decision) provide details as to why the charitable bequest was delayed or how long

the bequest was delayed. The *Leopold* court concluded that an interest payment to Care, Inc., a charity, was "an expense necessarily incurred in preserving the estate." 1972 WL 422 at *8. The IRS similarly concluded in the Action on Decision, "[t]here is evidence to show that the interest paid on the legacy was a necessary expense of administration." 1974 WL 36357.

expenses "as are allowable by the laws of the jurisdiction ... under which the estate is being administered." 26 U.S.C. § 2053(a). The Fifth Circuit has observed that in most instances "the state law may be relied upon as a guide to what deductions may reasonably be permitted for federal estate tax purposes." *Pitner*, 388 F.2d at 659. As the *Pitner* Court warned, however, deference to state law as a guide cannot justify the deduction of expenses which simply are not "administration expenses" within the meaning of federal estate tax law. *Id.*

Section 378B of the Texas Probate Code, entitled "Allocation of Income and Expenses During Administration of Decedent's Estate," provides:

> A devisee of a pecuniary bequest, whether or not in trust, shall be paid interest on the bequest ... beginning one year after the date the court grants letters testamentary....

Tex. Prob.Code § 378B(f) (Vernon Supp. 2004). Because Turner's statutory interest expense is mandated by the state of Texas, it is clearly "allowable by the laws of the jurisdiction." *See* 26 U.S.C. § 2053(a).

### III. *CONCLUSION*

For the reasons discussed above, the statutory interest expense properly incurred by Turner is a deductible expense of administration under IRC § 2053(a). Accordingly, Turner's motion for summary judgment is **GRANTED**, and the United States' motion for summary judgment is **DENIED**.[8] Turner is entitled to recover from the United States the sum of $450,108.08 as prayed.

The court further concludes that Turner is entitled, as a matter of law, to payment of pre– and post-judgment interest. "In any judgment of any court rendered ... for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the overpayment rate established under [26 U.S.C. § 6621] ... upon the amount of the overpayment ...". 28 U.S.C. § 2411. Interest is to be calculated "from the date of the payment ... thereof," *i.e.*, the date of the Turner's overpayment to the IRS, November 5, 1999. *Id.* Interest is calculated at the statutory rates reported below.[9] *See* 26 U.S.C. § 6621; Interest Rates; Underpayments and Overpayments, Rev. Rul.2003–126, 2003–52 I.R.B. 1249, 2003 WL 22962910 (Dec. 17, 2003).

| Dates | Interest Rate |
| --- | --- |
| 10/01/99–12/31/99 | 8 percent |
| 01/01/00–03/31/00 | 8 percent |
| 04/01/00–12/31/00 | 9 percent |
| 01/01/01–03/31/01 | 9 percent |
| 04/01/01–06/30/01 | 8 percent |
| 07/01/01–12/31/01 | 7 percent |
| 01/01/02–12/31/02 | 6 percent |
| 01/01/03–09/30/03 | 5 percent |
| 10/01/03–12/31/03 | 4 percent |
| 01/01/04–03/31/04 | 4 percent |

Within ten (10) days of this date, counsel for Turner shall submit a proposed form of judgment in conformity with this memorandum order. Unless the court is informed to the contrary within three (3) days, it will assume the United States has no objections to the form of judgment submitted by counsel for Turner.

**SO ORDERED.**

---

8. In light of this disposition, the court need not address Turner's alternative argument that the estate is entitled to a deduction under 26 U.S.C. § 2055. Furthermore, the United States of America's Motion to Exclude Expert Report and Objection to Plaintiff's Proposed Expert Testimony is denied as moot.

9. For taxpayers other than corporations, the overpayment rate is the federal short-term rate plus 3 percentage points, computed under 26 U.S.C. § 6621.

## *ORDER*

Before the court is the plaintiff's motion to clarify and amend the court's memorandum order of January 30, 2004. In that motion, the plaintiff argues (and the defendant apparently agrees) that pre-judgment interest should be calculated from the payment dates of October 2, 1997 and March 30, 1998, respectively, rather than November 5, 1999, as stated in the memorandum order. The motion to clarify and amend is **GRANTED**. Judgment will be entered accordingly.

**SO ORDERED.**