TASHIMA, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority’s disposition of the Us pendens and administrative expenses issues. I therefore concur in Parts II.D and II.E of the majority opinion. See Maj. Op. at 1060-61. I disagree, however, with the majority’s analysis and disposition of the primary issue in this appeal, the valuation of the Chenehark claim for federal estate tax purposes. I therefore respectfully dissent from Part II.B of the majority opinion.[1] See Maj. Op. at 1057-60.
The majority reverses the district court because its holding “was premised upon a misconstruction of Nevada law regarding contracts between cohabiting individuals....” Maj. Op. at 1056. This case, however, does not turn on issues of state contract law, but on federal tax law, and the Estate has raised no genuine issue of material fact as to whether it has met the requirement of the relevant estate tax provision, i.e., that the claim underlying its deduction be supported by full consideration in money’s worth.[2]
The estate tax issue in this case is governed by 26 U.S.C. § 2053. Although the majority is correct that 26 U.S.C. § 2053(a) “allows a deduction for ‘claims against the estate ... as are allowable by the laws of the jurisdiction ... under which the estate is being administered,’ ” Maj. Op. at 1057, a valid state law claim is a necessary condition for the deduction, but not necessarily a sufficient one. Section 2053 also requires that, to be deductible, claims “founded on a promise or agreement[ ] be limited to the extent that they were contracted ... for an adequate and full consideration in money or money’s worth[.]” 26 U.S.C. § 2053(c)(1)(A).[3] This requirement is not satisfied merely because a claim is “legally binding and enforceable against [an] estate” under state law. Taft v. Comm’r, 304 U.S. 351, 355, 58 S.Ct. 891, 82 L.Ed. 1393 (1938); see also United States v. Stapf, 375 U.S. 118, 131, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963) (A deduction for a claim against an estate “should not be predicated solely on the finding that a promise or claim is legally enforceable under the state laws governing the validity of contracts and wills.”). We have gone so far as to state that “the existence of legal consideration according to local law is immaterial ” for purposes of *1062 the estate tax. Giannini v. Comm’r, 148 F.2d 285, 287 (9th Cir.1945) (emphasis added).[4]
The statute’s requirement that deductions based on promises or agreements be supported by full consideration in money’s worth is based on a need to protect the estate tax. Without this limitation, there would be nothing to “prevent testators from depleting their estates by transforming bequests to the natural objects of their bounty into deductible claims.” Leopold v. United States, 510 F.2d 617, 623 (9th Cir. 1975). Accordingly, any contract between a decedent and someone who would be a natural object of his or her bounty is viewed with suspicion, requiring exceptional circumstances to be treated as something other than “simply an agreement to make a testamentary disposition to persons who are the natural objects of one’s bounty.” Id.
Thus, as we have previously held in the context of deductions under § 2053:
Under exceptional circumstances ... it may be that a claim by someone who might otherwise inherit from the decedent should be deductible under section 2053. If the claim is not simply a subterfuge for a nondeductible legacy, if the claim is supported by ‘adequate and full consideration, ’ and if the consideration is a non-zero sum which augmented the decedent’s estate, then it would seem that the deduction should be allowed. Whether or not a particular claim is deductible, then, will depend on the facts in each case.
Id. at 623-24 (emphasis added) (ellipsis in the original) (quoting Hartshorne v. *1063 Comm’r (In re Estate of Hartshorne), 402 F.2d 592, 594-95 n. 2 (2d Cir.1968)).[5] Chenchark, as Shapiro’s long-term romantic partner, is a natural object of Shapiro’s bounty, who was provided for in his will.[6] Chenchark testified that her claim was based on Shapiro’s promise that “if anything happened to him [she] would be taken care of.” Accordingly, the test set forth in Leopold applies here.
As is clear from the text of § 2053(c)(1)(A) and our decision in Leopold, whether or not exceptional circumstances are otherwise presented here, the claim must still be supported by adequate and full consideration that is “a non-zero sum which augmented the decedent’s estate.” 510 F.2d at 624. The Estate has adduced no evidence to raise a genuine issue of material fact as to whether Chenchark provided full consideration that augmented Shapiro’s estate.
As an initial matter, “money or money’s worth” appears a number of times in the Internal Revenue Code and regulations, and is generally[7] defined by regulation as excluding love and affection. See, e.g., 26 C.F.R. § 25.2512-8 (“A consideration not reducible to a value in money or money’s worth, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift.”); 26 C.F.R. § 301.6323(h)-l(a)(3) (“Nor is love and affection, promise of marriage, or any other consideration not reducible to a money value a consideration in money or money’s worth.”); see also Harris v. Comm’r, 340 U.S. 106, 107-08, 71 S.Ct. 181, 95 L.Ed. 111 (1950) (“The federal estate tax and the federal gift tax ... are construed in pari materia, since the purpose of the gift tax is to complement the estate tax by preventing tax-free depletion of the transferor’s estate during his lifetime. Both the gift tax and the estate tax exclude transfers made for ‘an adequate and full consideration in money or money’s worth.’ ” (citation and footnotes omitted)). The Tax Court also has observed that love and affection do not constitute adequate consideration for tax purposes. See, e.g., Cavett v. Comm’r, 79 T.C.M. (CCH) 1662, 2000 WL 287975, at *7 (2000) (“If the services to decedent sprang from love and affection, the services themselves are tantamount to an expression of love and affee *1064 tion, which cannot be reduced to money or money’s worth.”). Accordingly, any love and affection provided to Shapiro by Chenchark must not, and cannot, be treated as consideration for purposes of § 2053, even if it would support a contract under state law. “Nevada law regarding contracts between cohabiting individuals,” Maj. Op. at 1056, is simply irrelevant to determining the adequacy of consideration under § 2053.
While some of the above-cited authorities appear to suggest that, where the motivation for services provided was love and affection, the entire value of the services are discounted for tax purposes even if they had monetary value, there is no reason to decide that issue in this case. Even assuming that anything Chenchark provided to Shapiro out of love and affection would support a deduction of its full dollar value, the Estate has presented no evidence here that would create a genuine issue of material fact that Chenchark enhanced the value of the Estate in money’s worth. Although there is evidence that Chenchark supervised Shapiro’s household staff, including a maid, gardener, and a pool man, and that she cooked, cleaned, and provided emotional support to Shapiro,[8] the Estate presented no evidence that these services have a cash value or what that cash value would be.
Further, the Estate did not controvert the government’s statement in support of its motion for summary judgment that “[djuring the entire time Chenchark lived with Shapiro, she ... never contributed any money or other assets of any material value to the relationship.” Perhaps more importantly, the Estate itself represented that Chenchark gave nothing of monetary value to the relationship. It represented that Chenchark “was supportive of [Shapiro] emotionally, and supportive of him in the business matters ... which he sometimes discussed with her. Their association was ... an intimate, personal association where they shared their lives, hopes and dreams. [Chenchark] gave no physical asset except herself to the relationship .... ” Further, Shapiro averred before his death that Chenchark “ha[d] never contributed anything to the acquisition or maintenance of any of [his] properties,” and Steven R. Scow, one of the co-executors of the Estate, testified that there was no agreement between Shapiro and Chenchark to pool their assets.
Thus, the Estate has not raised a genuine issue of material fact to support its contention that Chenchark’s claim against the Estate, assuming arguendo that it was contracted bona fide,[9] was supported by full consideration in money’s worth for the purpose of federal tax law. Accordingly, I would affirm the district court on this issue.
For the foregoing reasons, I dissent from the majority’s reversal of the district court’s grant of summary judgment to the government on the Chenchark claim.

. Because I would affirm the district court’s disallowance of the Chenehark claim under 26 U.S.C. § 2053, I find it unnecessary to reach the judicial estoppel issue, discussed in Part II.C. See Maj. Op. at 1059-60.

. The district court’s supposed misconstruction of Nevada law is also immaterial. In the summary judgment context, our review is de novo and we "may affirm the district court's [grant of] summary judgment on any ground supported by the record.” Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010). Accordingly, even assuming that the district court was mistaken in its construction of Nevada contract law, we are free to affirm on alternate grounds. See, e.g., Crowe v. County of San Diego, 608 F.3d 406, 432 (9th Cir.2010).

. To be deductible under § 2053, the claim supporting the deduction must also be "contracted bona fide.” 26 U.S.C. § 2053(c)(1)(A). In this case, aside from the question of whether Chenchark’s consideration would have supported a contract under Nevada Law (to say nothing of a deduction under § 2053), it is by no means clear that there was in fact a contract to support it. There is no need, however, to reach this issue for the reasons discussed herein.

. It is neither unusual nor unreasonable for federal tax law to diverge from state contract law in this regard, because the two bodies of law are concerned with protecting very different interests. Although state law often provides protections for unmarried individuals from their partners through contract, it does so in order to protect the reliance interests of individuals who expected their long-standing relationships would last and held their property in accordance with this reliance. See, e.g., W. States Constr. v. Michoff, 108 Nev. 931, 840 P.2d 1220, 1224 (1992) ("[T]his court must protect the reasonable expectations of unmarried cohabitants with respect to transactions concerning their property rights.”). The estate tax, by contrast, is designed to prevent tax avoidance. See, e.g., Bank of N.Y. v. United States, 526 F.2d 1012, 1018 (3d Cir.1975) (denying a deduction under § 2053 that may be enforceable under state law because it did not meet the requirements of federal law, even where there was no reason to suspect that the intent of a transaction “was to establish a situation permitting the evasion of estate taxes, [because] to sanction a deduction in this type of a case could encourage tax avoidance”).
More specifically, it is not unreasonable to have different rules in the different contexts under the facts presented by this case. Cohabiting partners would not lose their protection from an inequitable allocation of property within their domestic relationships because of a failure of the estate tax to recognize a deduction for their property claims; fair collection of the estate tax is not hampered by the recognition that unmarried individuals need legal protection of the economic arrangements made within their domestic relationships.
Further, rightly or wrongly, as a policy choice of Congress the estate tax bestows special status on married couples that it does not bestow on unmarried couples. See, e.g., 26 U.S.C. § 2032A(e)(2) ("The term 'member of the family’ means, with respect to any individual, only — (A) an ancestor of such individual, (B) the spouse of such individual, (C) a lineal descendant of such individual, of such individual’s spouse, or of a parent of such individual, or (D) the spouse of any lineal descendant described in subparagraph (C).”); § 2043(b) (providing that relinquishments of marital rights are not consideration "in money or money’s worth” except for purposes of § 2053 where requirements of § 2516, which governs certain written divorce agreements, are met); § 2056(a) ("[T]he value of the taxable estate shall ... be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse....”).

. In the specific context considered by Leopold, that of divorce agreements, the Tax Reform Act of 1984, § 425(a), Pub. L 98-369, 98 Stat. 494 (1984), appears to have supplanted the inquiry by amending 26 U.S.C. §§ 2043 & 2053 to allow the relinquishment of marital rights to qualify as consideration supporting deductions if certain criteria are met. See 26 U.S.C. §§ 2043(b)(2) & 2053(e); see also 26 U.S.C. § 2516. No authority, however, suggests that this has diminished the weight of the principles Leopold established beyond the limited context of written divorce agreements.

. Admittedly, Shapiro’s provision for Chenchark in his will was not without limitation. Shapiro provided for a bequest of $50,000 for Chenchark in his will with the proviso that the gift would lapse if they were not residing together at the time of his death. As defendant and co-executor Steven R. Scow noted in a letter to Shapiro, however, although in Scow's opinion Chenchark had no legitimate claim to Shapiro’s assets, ”[s]ince she has lived with [Shapiro] for twenty years, it would be a nice gesture ... to make some arrangement to put money in an account or trust to pay for support during her lifetime.”

. On occasion, the limitation is not express, but the exclusion remains clear. See, e.g., 26 C.F.R. § 20.2043-l(a) ("To constitute a bona fide sale for an adequate and full consideration in money or money's worth, the transfer must have been made in good faith, and the price must have been an adequate and full equivalent reducible to a money value. If the price was less than such a consideration, only the excess of the fair market value of the property ... over the price received by the decedent is included in ascertaining the value of his gross estate.”).

. I note, however, that Chenchark stated in her deposition that "I didn't work in the home. I had a maid.”

. See footnote 3, supra.