[S. F. No. 16380.   In Bank.—Oct. 20, 1941.]

PAULA VILLAIN et al., Respondents, v. CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

John J. O'Toole, City Attorney, Norman Sanford Wolff, Deputy City Attorney, and Grover O'Connor for Appellants.

Michael Riordan and Frederick Levy, as *Amici Curiae*, on behalf of Appellants.

Joseph T. Curley and Marvin C. Hix for Respondents.

PULLEN, J., *pro tem.*—The defendants, Civil Service Commission of the City and County of San Francisco *et al.*, appeal from a declaratory judgment decreeing that plaintiffs are the holders of permanent civil service positions as

general clerk stenographer in the public welfare department of the city and county, and ordering their reinstatement in such positions, and the payment of their salaries at the rate of $150 a month, less sums earned, together with any increase provided by law, from respective dates of their purported discharges in the fall of 1938 and spring of 1939. The main question on appeal is whether the uncontradicted evidence supports the trial court's findings and conclusion that the positions held by plaintiffs were in fact permanent, although erroneously designated as temporary.

In August, 1934, the civil service commission conducted an examination to establish an eligible list for appointment to the classified civil service position of general clerk stenographer. Plaintiffs, together with many others, participated in this examination, and qualified for appointment. On a list of 225 eligibles adopted by the commission on November 14, 1934, they ranked respectively as numbers 177, 191, 202, and 224. This eligible list remained in effect until its expiration by charter provision four years after adoption (Charter, § 145, Stats. 1931, p. 3063).

The charter provisions which govern city and county employment (Charter, Stats. 1931, pp. 2973, et seq.), specify that whenever a position controlled by civil service is to be filled, "the appointing officer shall make a requisition to the civil service commission," and "thereupon, the commission shall certify to the appointing officer the name and address of the person standing highest on the list of eligibles for such position." (Charter, § 148, Stats. 1931, p. 3064.)

It is further provided that "From the requisition of the appointing officer or otherwise, the commission shall determine whether the position is, in character, temporary, seasonal or permanent, and shall notify the candidate in accordance therewith to the end that the candidate may have knowledge of the probable duration of employment. The commission shall provide for such waiver of temporary or seasonal employment as it may deem just to candidates. Any appointment to a position declared permanent by the commission shall be on probation for a period of six months. At any time before the expiration of six months the appointing officer may terminate the appointment." (Charter, § 148, Stats. 1931, p. 3065.)

Supplementing the above provision is charter 141 (Stats. 1931, p. 3060) which authorizes the commission to ''adopt rules to carry out the civil service provisions of this charter,'' and specifies that ''such rules shall govern applications . . . eligibility . . . certification of eligibles; appointments . . . lay-offs . . . the filling of positions, temporary, seasonal and permanent . . . and such other matters as are not in conflict with this charter.'' Rule 15 of the commission, adopted under authority of the provision last quoted, defines permanent and temporary or seasonal positions, and states among other things that a position designated as permanent shall be deemed such only after an investigation and declaration of its permanency has been made by the commission. It further declares that all positions which do not come within the stated definition of ''permanent positions,'' shall be deemed to be temporary or seasonal, and that appointments to the latter positions shall expire automatically at the end of five months, and that the names of the appointees shall automatically return to their places on the register of eligibles and shall not again be considered for appointment to a temporary position under the same appointing officer until a period of at least one day has elapsed from the date of termination of the prior tenure.

In conformity with the procedure outlined above, the commission permitted those on the general clerk stenographer eligible list of 1934, who were interested only in securing permanent employment, to waive appointment to temporary or seasonal positions, and to retain their rank for certification to permanent appointments (Charter, § 148, *supra*). Plaintiffs did not exercise this right of waiver, and during 1936 and 1937 they were called for and accepted temporary employment at a salary of $150 a month as general clerk stenographer in the county welfare department which later merged with the public welfare department. They knew that the positions which they accepted had never been declared by the commission to be permanent, but were designated as temporary. In accepting, each signed a written certification to a ''temporary position.'' On the reverse side of the certification, rule 15 of the commission, *supra,* was printed in full.

Had the positions been classified as permanent, plaintiffs would not have been certified to them, for it is admitted that

at the time of certification there were approximately fifty eligibles whose names preceded those of plaintiffs on the civil service list, a great number of whom would undoubtedly have been willing to accept the positions, if offered to them as permanent employment. It was solely by reason of the fact that the positions were temporary, that the plaintiffs, although among the lowest 25% on the eligible list, were able to secure a place upon the city and county payroll.

After plaintiffs had held the positions for five months, they were discharged for one day, their names were returned to the eligible list, and they were then re-appointed to the same positions. During the one day of discharge, their work was allowed to accumulate; no other employee handled it. This process of a five months' period of employment, followed by an interval of one day of unemployment, was repeated through several successive periods, the last one terminating subsequent to expiration of the eligible list in November, 1938. Thereafter, as plaintiffs could only become eligible for re-appointment by passing another examination, the positions were filled by new appointees. Plaintiffs asserted that their tenure had ripened into a permanent employment, and requested that the commission recognize that status. Upon its refusal to do so, the present action was instituted.

Plaintiffs alleged that the positions held by them, although designated as temporary, were continuing in character, were in fact permanent, and should have been so classified. They charged that their tenure of those positions for more than the probationary six months' period (Charter, § 148, *supra*), conferred upon them the status of permanent employees, and that the procedure whereby they were laid off for one day at the end of each five months' period (Rule 15, *supra*), was invoked arbitrarily for the express purpose of preventing them from acquiring a permanent status and avoiding the necessity of re-classifying the positions as permanent.

The trial court, finding all of plaintiff's allegations to be true, concluded that the positions were permanent, that plaintiffs had acquired a permanent right to occupy them, and that the commission was without authority to adopt Rule 15, *supra,* or to apply the procedure there outlined.

These findings and conclusions are contrary to the undisputed evidence and the law. Charter, § 148, *supra,* spe-

cifically directs the commission to determine whether a position is, in character, temporary, seasonal, or permanent, and to notify the candidate so that he may have knowledge of the probable duration of employment, and Charter, § 141, *supra,* expressly authorizes the commission to adopt rules to govern its action in carrying out this and other civil service provisions of the charter. Therefore, in formulating and adopting rule 15, *supra,* and in applying it, the commission was acting by virtue of and in conformity with the express mandate and direct authority conferred upon it by the charter. ■■ Whether a better method of classifying and filling civil service positions could be found, is a subject with which the courts are not concerned, for the Constitution, article XI, section 8½, subdivision 4, gives to chartered municipalities plenary power to prescribe in their charters the manner in which, the method by which, the times at which, and the terms for which its officers and employees shall be elected or appointed. So, as stated in *City of Napa* v. *Easterby,* 61 Cal. 509, 520: "We cannot inquire whether this is the best system which could have been adopted. It is the system found in the charter."

■■ The standard of classification established by rule 15, *supra,* is not arbitrary, unreasonable, or unjust. Among other things it defines as permanent: "(a) A position that is definitely enumerated in the quantity column of the annual salary ordinance and for which funds have been provided to sustain it for the fiscal year involved," or "(b) Any position whose past history, and future prospects, of its tenure or existence, are such that in the judgment of the civil service commission should cause such position to be treated as a permanent position; provided the filling of such position is authorized by the annual salary ordinance and annual appropriation ordinance, though not definitely enumerated in the quantity column of the annual salary ordinance; and provided further that, unless otherwise ordered by the civil service commission, no position shall be designated a permanent position under this subdivision (b) . . . except by resolution adopted by the civil service commission, and then only after such position has been filled by at least two immediately succeeding temporary appointments for the maximum period of five months each, and the civil service commission, after investigation, then declares that such position

shall be deemed, for the purposes of its rules, a permanent position.''

The rule does not and could not empower the commission to designate as temporary a position which is neither temporary in fact nor by the law of its creation, or to hold a position permanent in fact within the meaning of subdivision (b), indefinitely under a temporary designation through neglect to make an investigation and declaration of permanency, thereby preventing the appointee from acquiring permanent tenure after serving through the probationary period. In effect the rule merely affords a means of procedure for carrying out the mandate of Charter, § 148, *supra*, for proper classification by the commission of positions which have been duly created and permanently established in the mode prescribed by charter, by annual appropriation ordinance of the board of supervisors, and annual budget and salary ordinance. (See Charter, §§ 69–78, Stats. 1931, pp. 3019 *et seq.;* § 143, p. 3062.)

The present record affords no support for the conclusion that the rule was misapplied, or that the positions to which plaintiffs were appointed were erroneously classified. On the contrary, the undisputed evidence shows that the positions were in fact temporary and were properly so classified. At the time of plaintiff's appointment, prevailing economic conditions, necessitating unusual relief to indigents and unemployed, had placed added work on the welfare department. The very nature of the situation made it difficult to determine whether this burden would be a continuing factor, requiring the permanent employment of more workers. The duties of the department were of great magnitude and were variable and unpredictable, depending upon conditions beyond the control of the city, and subject to economic changes and the laws of the state and federal government. The liberalizing of the social security law in 1937, making more people eligible to receive old age assistance greatly increased the work of the department, but there was some expectation that after the peak of the load had been carried, this branch of the work would decline. Later developments indicated that the need for additional workers would be a continuing one, but it was not until the fiscal year 1939–1940 that conditions were considered such as to fix definitely the possibility of a permanency in this type of employment. By

that time plaintiffs' eligibility had automatically terminated. During the period of their service, the work was justifiably handled on a temporary basis.

The salary ordinance adopted by the board of supervisors for the fiscal year 1936–1937, in the section devoted to the welfare department, definitely enumerated and provided funds (Rule 15, subd. a, *supra*), for only three positions of general clerk stenographer. The 1937–1938 ordinance enumerated and provided for the same three positions, and also contained a further provision for fourteen general clerk stenographers at a maximum monthly salary of $150. The 1938–1939 ordinance provided a further increase of sixteen general clerk stenographers. It was stipulated that none of the plaintiffs was ever appointed to or occupied any of these enumerated positions, nor was the compensation received by them taken from appropriations for positions which were designated as permanent in character; it was paid in whole or in part from an appropriation made by the board. of supervisors for the payment of salaries of so-called temporary employees.

The requisition of the appointing officer which resulted in plaintiffs' certification, was one calling for temporary appointees, and as such plaintiffs accepted the appointments and re-appointments. During the entire period of their prolonged temporary service they were fully aware of their status, but made no effort, by proceeding in mandamus or otherwise, to test the character of their positions or secure a declaration of permanency. In fact, had the positions been permanent, they would not have been eligible for appointment to them because of the many candidates with higher rating on the civil service list. During the period in question at least two of the plaintiffs were given notice by the commission that they might apply for permanent positions at a salary of $100 a month, but they failed to respond. There is no showing that the commission acted other than in the highest good faith in dealing with them, or that any injustice or discrimination was practiced against them.

Plaintiffs rely strongly upon several cases which were decided prior to adoption of the present charter (Stats. 1931, p. 3108, effective January 8, 1932). (*McGillicuddy* v. *Civil Service Com.*, 133 Cal. App. 782 [24 Pac. (2d) 942]; *Powers* v. *Board of Public Works*, 216 Cal. 546 [15 Pac. (2d) 156];

*Rodgers* v. *Board of Public Works*, 208 Cal. 291 [281 Pac. 64].) The civil service provisions of the new charter so altered those of the prior charter as to make these cases of little value in determining the issues here presented. The distinction is noted in *Doerr* v. *Civil Service Commission*, 21 Cal. App. (2d) 173 [68 Pac. (2d) 731], at p. 176.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Respondents' petition for a rehearing was denied November 17, 1941.