**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EVELYN JENKINS,
            *Plaintiff-Appellant,*

v.

COUNTY OF RIVERSIDE; KENNETH B.
COHEN, in his official capacity,
            *Defendants-Appellees.*

No. 03-55412

D.C. No.
CV-99-05476-SVW

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
December 10, 2004—Pasadena, California

Filed February 9, 2005

Before: James R. Browning, Harry Pregerson, and
Marsha S. Berzon, Circuit Judges.

Per Curiam Opinion

**COUNSEL**

Diane Catron Roth, Roth & Roth, LLP, Riverside, California, for the plaintiff-appellant.

Christopher D. Lockwood, Aris, Lockwood, & Gray, San Bernardino, California, for the defendants-appellees.

**OPINION**

PER CURIAM:

Plaintiff-Appellant Evelyn Jenkins alleges, in this § 1983 suit, that Defendant-Appellee County of Riverside ("the County") deprived her of her property right in continued pub-

lic employment in violation of the Fifth and Fourteenth Amendments when she was summarily terminated in 1998. A prior panel of this court concluded that Jenkins would prevail on such a claim so long as she was a "regular" employee at the time of her termination. *See Jenkins v. County of Riverside*, 25 Fed. Appx. 607, 609 (9th Cir. Jan. 7, 2002) (unpublished decision) (*Jenkins I*) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)).[1] For the second time, this court is asked to determine whether Jenkins was a "regular" or "temporary" employee of the County as defined by sections 1(t) and 1(v), respectively, of County Ordinance 440, the "Riverside County Salary Ordinance."

[1] The first panel to consider this question held that a genuine issue of material fact existed as to whether Jenkins was "qualified" for regular employment within the County and remanded to the district court for further discovery. *See id.* at 610. No other deficiency in the record was identified. The prior panel's holding that the "qualification" question is determinative is the law of this case. *See S.F. Culinary, Bartenders & Serv. Employees Welfare Fund v. Lucin*, 76 F.3d 295, 297 & n.3 (9th Cir. 1996); Ninth Cir. R. 36-3(b)(I). Though we have limited discretion to decline to follow the law of the case, none of the factors justifying such a departure apply here. *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995).[2] Disposition of this appeal therefore turns

---

[1]Although *Jenkins I* is the law of this case, nothing in this opinion alters its status as an unpublished disposition, not citeable under Circuit Rule 36-3.

[2]As *Leslie Salt* explained:

> The law of the case doctrine is not an absolute bar to reconsideration of matters previously decided. The doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Thus, the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice.

55 F.3d at 1393 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).

entirely on whether Jenkins was, in fact, "qualified" for regular employment. Because we hold that she was so qualified, we reverse and remand for further proceedings.

## I.  Background

Jenkins was hired by the County as an "Office Assistant II" ("OA-II") on May 14, 1992. As the deposition testimony of her supervisor makes clear, she was hired to work at a local hospital to "clean up a tremendous backlog of fetal monitoring strips which were piled in the hospital's basement," "finished that task within a few months and less than six months after she was hired," and when she completed that task, was "trained and assigned with the rest of the regular staff to perform the ongoing work of the [nursing] department." As the district court stated, "[i]t is undisputed that the position Plaintiff held was designated a temporary position, and at all times Plaintiff was designated a temporary employee. Plaintiff worked full-time and continuously in this position until her termination on or about May 26 or 27, 1998."

While employed as an OA-II, Jenkins consistently received exemplary performance reviews and worked well in excess of the annual 1,000-hour ceiling that County Ordinance 440 placed on temporary employees.[3] During her employment at

---

[3]As here relevant, the Ordinance provides:

> No temporary employee shall be permitted to work in the same capacity in which he/she performs substantially continuous service for more than 1000 working hours (approximately 6 months of full time service) during any one fiscal year. In the event that a department head has unusual circumstances to warrant employment of a temporary employee for a longer period, the department head may request approval on the Board of Supervisors' agenda, prior to the employee working more than 1000 hours in the fiscal year. The request to extend the service shall set forth the justification, the hire date of the temporary employee, and the number of hours requested in the extension. Any additional extension shall require further Board of Supervisors' approval annually, prior to the employee working 1000 hours in that fiscal year.

County Ordinance 440 § 12.C(3).

the hospital, Jenkins applied for regular employment seven times. On four of those seven occasions, Jenkins passed the written examination required of all civil service applicants. Each time she passed the exam, she was interviewed for a regular position but not offered one.

On May 26, 1998, Jenkins was summarily terminated. She claims that her termination came less than six hours after she turned in a doctor's report related to a worker's compensation claim that she had initially filed in 1996 and suggests a connection between the two events. Regardless of the reason for her termination, however, the parties do not dispute that it was without cause, without notice, and without a hearing.

In her amended complaint, Jenkins alleged that the County deprived her of her property right in continuing public employment, in violation of 42 U.S.C. § 1983; violated the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12,900 *et seq.*, in terminating her on the basis of her disability; and violated the Meyers-Milias-Brown Act, *id.* §§ 3500 *et seq.*, by breaching her employment contract.

Reaching only the § 1983 claim,[4] the district court, upon cross-motions for summary judgment, ruled in the County's favor, finding that Jenkins never acquired the status of a permanent employee, nor was she ever "qualified" for such status. As discussed above, a panel of this court reversed the district court's decision in a memorandum disposition, remanding to allow Jenkins to proceed with discovery and provide evidence in support of her claim that she was, indeed, qualified for a regular position.

On remand, and after discovery, the district court reached the same conclusion again. Relying on California cases described in more detail below, and summarizing the time line

---

[4]Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment.

of Jenkins' failed attempts to obtain regular employment status, the court held that the only evidence before it "conclusively indicates that Plaintiff was *not* qualified to obtain a permanent position." The court opined that "the only explanation for [Jenkins'] failure to acquire a permanent position is that she was not selected for a regular position because she did not measure up to the other applicants who were selected," (internal quotation marks omitted). According to the district court, Jenkins' failure to complete two "requirements" — being offered a regular position and completing a fixed probationary period during which she would have been employed "at-will" — was fatal to her claim that she was "qualified" for a regular position. This timely appeal followed.

## II.   Analysis

**[2]** The district court's analysis reads "qualified" too narrowly, in light of extant California case law. Jenkins established the facts that she (a) passed the written civil service examination; (b) was interviewed for a regular position, indicating that she scored very high on the examination; (c) took a temporary position; (d) exceeded the limits the Ordinance placed on the number of hours a temporary employee could work; and (e) was reviewed, successfully, as if she were a probationary employee. These factors, taken together, indicate that she was, indeed, "qualified" for regular employment.

The result here is compelled by the California Supreme Court's only pertinent decision, *Villain v. Civil Service Commission of San Francisco*, 117 P.2d 880 (Cal. 1941), and by the District Court of Appeal's decision in *McGillicuddy v. Civil Service Commission*, 24 P.2d 942 (Cal. Dist. Ct. App. 1933).

**[3]** *McGillicuddy* concerned trackmen employed by the City and County of San Francisco who brought suit challenging their removal without cause from civil service positions that were designated "temporary appointments." The Califor-

nia Court of Appeal found conclusive "that respondents' names appeared on the eligible list, and that each was appointed therefrom after certification by the commission, and that each had been employed continuously in his position for a long period of time before removal." *McGillicuddy*, 24 P.2d at 943; *see also id.* at 943-44 ("As respondents had worked in such positions in excess of the maximum probationary period fixed by the charter, their appointments were to be 'deemed complete' within the meaning of the old charter."). The court's decision was based on an earlier — and materially different — version of the San Francisco charter than that at issue in *Villain*, *see* 117 P.2d at 883-84 (distinguishing *McGillicuddy*). Nevertheless, its underlying conclusion is pertinent here:

> [T]he commission had no power to adopt a rule whereby positions which were neither temporary in fact nor temporary by the law of their creation could be designated temporary, thereby preventing the eligibles appointed thereto from acquiring permanent tenure after serving through the probationary period. . . . Under such a rule as interpreted by the commission, the appointing power could absolutely prevent eligibles from acquiring a permanent status merely by following the procedure adopted in the present case. Regardless of the true nature of the position or the length of time the appointee had served, such appointee could be removed at will, according to appellants' theory, without cause and without a hearing merely because he had been appointed to a position designated under the rule as "temporary."

24 P.2d at 944.

*Villain* did not take issue with this analysis, but instead distinguished *McGillicuddy* on its facts. At issue in *Villain* were temporary stenographer positions offered to four individuals by the City and County of San Francisco in 1934. The plain-

tiffs had taken the written civil service examination, and, out of 225 individuals who passed the written examination, they ranked 177, 191, 202, and 224. At the time, the San Francisco charter required that civil service positions be offered to the *highest*-scoring person on the list of those who passed the written qualifying examination. *See Villain*, 117 P.2d at 881. The question before the California Supreme Court was whether the plaintiffs, who were initially hired to temporary positions, had effectively become permanent civil service employees and therefore safe from termination without cause.

The plaintiffs' low ranking on the eligibility exam was central to the *Villain* court:

> Had the positions been classified as permanent, plaintiffs would not have been certified to them, for it is admitted that at the time of certification there were approximately fifty eligibles whose names preceded those of plaintiffs on the civil service list, a great number of whom would undoubtedly have been willing to accept the positions, if offered to them as permanent employment. It was solely by reason of the fact that the positions were temporary, that the plaintiffs, although among the lowest 25 per cent on the eligible list, were able to secure a place upon the city and county payroll.

*Id.* at 881-82; *see also id.* at 883 ("[H]ad the positions been permanent, they would not have been eligible for appointment to them because of the many candidates with higher rating on the civil service list."). Also of importance to the court in *Villain* was the fact that the plaintiffs had not attempted to convert their status from temporary to permanent, even though they had several opportunities to do so. *See, e.g.*, *id.* ("During the period in question at least two of the plaintiffs were given notice by the commission that they might apply for permanent positions at a salary of $100 a month, but they failed to respond.").

**[4]** Applying *Villain* and *McGillicuddy*, the parties do not dispute that Jenkins worked far more hours than the maximum authorized for temporary employees. Nor do they dispute that Jenkins passed the written civil service examination on several occasions. Nor do they dispute that, in several instances, Jenkins was interviewed for a permanent position, reflecting the fact that her score on the written civil service examination was high enough to qualify her for a permanent position. Unlike the ordinance in *Villain*, County Ordinance 440 does not require that jobs go to the *very* highest scoring applicants; the hiring agency can choose from among those who attain high scores, and, in this case, chose Jenkins for interviews *based on her high scores* on several occasions.[5] That it would have been *permissible* to hire an applicant under the applicable rules is all that California law requires for an applicant to be considered "qualified" for a permanent civil service position.[6] *Compare, e.g.*, *Welch v. City of Long Beach*,

---

[5]In its petition for rehearing, the County represents for the first time in this litigation that the interview was an "oral test," and that only the person "identified as the top candidate" would be offered a position. Because Jenkins was never the "highest scoring" candidate on this "test," the County maintains, she was never "qualified" for regular employment. Nothing in the record, however, including the evidence cited by the County, indicates that the choice among candidates interviewed for the OA-II position is based on objective, quantifiable standards. Instead, the "top candidate" is the person chosen from the interviews, nothing more. To call that person the only one "qualified" is to deprive the concept of de facto "regular" employees of any meaning; under that approach, no person not *actually hired* as a regular employee could ever be "qualified" to be a regular employee.

In the analogous context of Title VII, we have held that meeting the objective criteria for a position is sufficient to satisfy the "qualified" prong of the test enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), without regard to subjective hiring decisions. *See, e.g.*, *Lynn v. Regents of the Univ. of Cal.*, 656 F.2d 1337, 1342 (9th Cir. 1981). The California case law supports the same approach here.

[6]We note, again, that our reading of California law is constrained by the law of the case. We are not today deciding that showing that an employee was "qualified" is enough, standing alone, for that employee to claim de facto "regular" employment status. Rather, we address that factor alone because it is the one left in dispute after the earlier appeal.

241 P.2d 26 (Cal. Dist. Ct. App. 1952), *Matherly v. Allen*, 194 P.2d 18 (Cal. Dist. Ct. App. 1948), *Ticknor v. City of Sacramento*, 181 P.2d 893 (Cal. Dist. Ct. App. 1947), *Campbell v. Bd. of Civil Serv. Comm'rs of the City of L.A.*, 173 P.2d 58 (Cal. Dist. Ct. App. 1946), *and Nilsson v. State Pers. Bd. of Cal.*, 78 P.2d 467 (Cal. Dist. Ct. App. 1938), *with Villain*, 117 P.2d at 881, *and McGillicuddy*, 24 P.2d at 943-44.

The remaining reason given by the district court for concluding that Jenkins did not qualify for a regular position is that regular employees must pass a six-month probationary period before their employment is no longer at-will. As Jenkins notes, however, "[s]he was given the 3-month, 5-month, and 12-month performance reviews given to probationary employees, and thereafter given annual performance evaluations as are regular employees who have obtained permanent status." Given that Jenkins was employed in her position for over five-and-a-half years, and given that she qualified for a regular position at least six months ago, the fact that the county has consistently reviewed her performance in the exact manner in which it reviews that of de jure "regular" employees is sufficient to satisfy the probation requirement.

**[5]** As Jenkins was "qualified" for a regular position under California law, for purposes of this case she was a de facto "regular" employee within the meaning of County Ordinance 440 at the time she was summarily terminated. Because she established that she was a de facto regular employee under the Ordinance, she had a property right in continued public employment under the Fifth and Fourteenth Amendments. As the district court noted, the property right question was the only disputed liability question; if she had a property right, then "the County violated [Jenkins'] due process rights by terminating her employment without notice or a hearing." Jenkins was therefore entitled to summary judgment as to the violation of her due process rights.

**REVERSED and REMANDED.**