**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ESTATE OF BERNARD SHAPIRO;
CLYDE E. PITCHFORD; STEVEN R.
SCOW,

      *Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
      *Defendant-Appellee.*

No. 08-17491

D.C. No.
2:06-cv-01149-RCJ-
LRL

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted
December 10, 2010—San Francisco, California

Filed February 22, 2011

Before: Robert E. Cowen*, A. Wallace Tashima, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Silverman;
Partial Concurrence and Partial Dissent by Judge Tashima

---

  *The Honorable Robert E. Cowen, Senior Circuit Judge for the Third
Circuit, sitting by designation.

**COUNSEL**

John M. Youngquist (argued), San Francisco, California, Donald L. Feurzeig of Feurzeig, Mark & Chavin, LLP, San Francisco, California, for the appellant.

Carol Barthel (argued) and Jonathan S. Cohen, United States Department of Justice, Tax Division, Washington, DC, for the appellee.

**OPINION**

SILVERMAN, Circuit Judge:

Bernard Shapiro and Cora Jane Chenchark lived together for twenty-two years, but they never married. Over those twenty-two years, Chenchark cooked, cleaned, and managed their household. When they broke up, she filed a palimony suit against him in state court. While the suit was pending, he died. In the context of this tax refund lawsuit filed by Shapiro's estate, the district court held that Chenchark's homemaking services did not, as a matter of law, provide sufficient consideration to support a cohabitation contract between Shapiro and Chenchark, and that therefore, an estate tax deduction for the value of Chenchark's claim was properly disallowed. Because the district court's holding was premised upon a misconstruction of Nevada law regarding contracts between cohabiting individuals, we reverse.

## I.   Background

Shapiro and Chenchark met in 1977 and began dating shortly thereafter. Chenchark moved in with Shapiro in 1978. They lived together for the next twenty-two years, but they never married. During the relationship, Chenchark provided homemaking services to Shapiro, including cooking, cleaning, and managing the household employees, such as the gardener and housekeeper. Shapiro paid for Chenchark's living expenses and provided her with a weekly spending allowance. Chenchark contributed no financial assets to the household.

In 1999, after learning that Shapiro was involved with another woman, Chenchark sued Shapiro in Nevada state court, claiming breach of express and implied contract, breach of fiduciary duty, and *quantum meruit*. According to Chenchark's complaint, she and Shapiro had agreed to pool their resources and to share equally in each others' assets.

Shapiro died on February 12, 2000, while Chenchark's action was still pending. Shapiro's estate filed an estate tax return in May 2001 and paid $10,602,238 in estate tax and generation-skipping transfer tax. The Estate continued to defend against Chenchark's claim, and in September 2001 a jury returned a verdict in favor of the Estate, specifically finding that Shapiro and Chenchark did not enter into any express or implied contract. Chenchark appealed, and while the appeal was pending the parties settled Chenchark's claim, along with another lawsuit in which she contested Shapiro's will, for approximately $1 million.

In June 2003, some time after settling Chenchark's claim, the Estate filed an amended estate tax return seeking, among other adjustments, to deduct $8 million from the value of the taxable estate under 26 U.S.C. § 2053(a)(3) for Chenchark's claim. Based on the amended return, the Estate claimed a refund of approximately $3.5 million. The IRS disallowed any deduction for Chenchark's claim, and only refunded $361,483 as result of unrelated adjustments.

In August 2006, the Estate brought suit in federal court seeking a refund of approximately $2 million. According to the Estate's complaint, an expert valued Chenchark's claim at just over $5 million as of the date of Shapiro's death. The Estate later amended its complaint to include an additional claim for relief, seeking a refund for the decrease in property value due to notices of *lis pendens* recorded by Chenchark on Shapiro's properties during the pendency of her lawsuit. In its amended complaint, the Estate sought a total refund of $4,863,480.

The Estate and the United States filed cross-motions for summary judgment. The district court ruled in favor of the United States, holding that, "[w]ithin the uncontested facts, no evidence exists that Chenchark ever contributed anything other than love, support, and management of Shapiro's household to the relationship. These factors do not provide for suf-

ficient consideration to support a contractual agreement." The district court went on to conclude that, "because Chenchark did not make sufficient contributions to the Estate to provide consideration for the support she received from Shapiro," there "was no contract between them, [and] the money she sought in the Contract Action was, in fact, a gift from Shapiro." As a gift, Chenchark's claim against the Estate did not qualify as a deduction under § 2053, according to the district court. The court further held that the Estate was judicially estopped from arguing that Shapiro and Chenchark entered an employment agreement of sorts, with Chenchark's homemaking services as consideration, because the Estate had taken the opposite position in defending against Chenchark's lawsuit.

## II.  Discussion

### A.  Standard of Review

"We review the district court's grant of summary judgment *de novo*, to determine whether, viewing the evidence in the light most favorable to the non-moving party, there are genuine issues of material fact and whether the lower court correctly applied the relevant substantive law." *Fed. Trade Comm'r v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138 (9th Cir. 2010).

We review the district court's application of judicial estoppel for abuse of discretion. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).

### B.  Consideration

**[1]** In determining the value of the taxable estate for purposes of calculating the amount of estate tax owed, the tax code allows a deduction for "claims against the estate . . . as are allowable by the laws of the jurisdiction . . . under which the estate is being administered." 26 U.S.C. § 2053(a). In the case of claims against the estate that are founded on a promise

or agreement, this deduction is limited "to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth." *Id.* § 2053(c)(1)(A).

**[2]** Here, the district court concluded as a matter of law that Chenchark's contributions to the Estate—twenty-two years of cooking, cleaning, and other homemaking services—did not constitute sufficient consideration to allow the Estate to deduct her claim against it. The district court did not base its ruling on an application of § 2053(c)(1)(A)'s requirement that the underlying promise or agreement be contracted "for an adequate and full consideration in money or money's worth"; instead, the court rejected the Estate's deduction for Chenchark's claim based on an incorrect reading of Nevada state law regarding contracts between cohabitating partners. The district court erroneously concluded that Chenchark did not have a valid contract claim under *Western States Construction, Inc. v. Michoff*, 840 P.2d 1220 (Nev. 1992), because her love, support, and homemaking services did not, as a matter of law, provide sufficient consideration to support a contractual agreement.

In recent decades, widespread social acceptance of nonmarital cohabitation has triggered an expansion of cohabitants' legal rights. In *Marvin v. Marvin*, 557 P.2d 106 (Cal. 1976), a watershed case concerning such rights, the California Supreme Court held that courts should enforce express or implied contracts between nonmarital partners except when such a contract is inseparably based upon the provision of sexual services. *Id.* at 114. "[A]dults who voluntarily live together and engage in sexual relations are nonetheless as competent as any other persons to contract respecting their earnings and property rights. . . . [T]hey may agree to pool their earnings and to hold all property acquired during the relationship in accord with the law governing community property[.]" *Id.* at 116.

**[3]** In *Hay v. Hay*, 678 P.2d 672 (Nev. 1984), the Nevada Supreme Court adopted *Marvin*'s holding and ruled that

unmarried cohabitants may sue to enforce contracts concerning property rights. *Id.* at 674. Even an *implied* contract to share property, in which the terms of the agreement are "manifested by conduct," rather than stated in words, is enforceable. *Id.* The court reaffirmed the right of cohabitants to contract in *Western States Construction*. 840 P.2d at 1224. In *Western States Construction*, the court affirmed the trial court's finding that Lois Michoff and Max Michoff impliedly agreed to hold their property as though they were married, based on evidence that the couple filed joint tax returns, designated property as community property in their Subchapter S election form, and signed a spousal consent form for a partnership. *Id.* at 1224-25.

**[4]** Here, the district court compared the facts of Chenchark and Shapiro's relationship to that of Lois and Max Michoff in *Western States Construction*, and concluded that Chenchark "did not make sufficient contributions to the Estate to provide consideration for the support that she received from Shapiro." Because Chenchark did not provide sufficient consideration, the court held that Chenchark did not have a valid contract claim. But the Nevada Supreme Court in *Western States Construction* did not consider the amount or type of consideration necessary to support a contractual agreement between cohabitants—instead, the court just examined Lois and Max's conduct to determine whether their actions supported the conclusion that they intended to share their property as though married. Nothing in *Western States Construction* supports the district court's conclusion that "love, support, and management of [a] household" cannot, as a matter of law, constitute consideration for a promise to share property under Nevada law.

**[5]** Although the Nevada Supreme Court has not addressed the sufficiency of homemaking services as consideration for a contract to share property, California cases have held that a promise to perform homemaking services is adequate to support such a contract. *See*, *e.g.*, *Chiba v. Greenwald*, 67 Cal.

Rptr. 3d 86, 92 (Cal. Ct. App. 2007) (citing *Marvin*, 557 P.2d at 113 n.5); *Whorton v. Dillingham*, 248 Cal Rptr. 405, 409 (Cal. Ct. App. 1988). And under Arizona law, which, like Nevada and California, recognizes the right of unmarried cohabitants to contract to share property, homemaking services may constitute adequate consideration for such a contract. *Carroll v. Lee*, 712 P.2d 923, 926-27 (Ariz. 1986). It makes no difference if the parties exchanged "unlike services." *Id.* at 926. Given the Nevada Supreme Court's adoption of *Marvin* through *Hay* and *Western States Construction*, we think it is likely that Nevada would join those California and Arizona courts in holding that homemaking services can be adequate consideration for a property-sharing agreement between cohabitants. We therefore disagree with the district court's holding that Chenchark did not, as a matter of law, provide sufficient consideration to support a contract under Nevada law.

The United States argues that Chenchark's claim is not deductible because it is not supported by "adequate and full consideration in money or money's worth." We do not disagree with the government's point that, under § 2053(c)(1)(A), a claim founded on a promise or agreement, like Chenchark's claim, is only deductible "to the extent [it was] contracted bona fide and for adequate and full consideration in money or money's worth"—but the district court never reached this specific issue. Homemaking services such as those provided by Chenchark can be quantified and have a value attached to them. Our point is simply that these services are not of *zero* value as a matter of law, as the district court apparently believed.

**[6]** This is not to say that, even if a factfinder determines that Chenchark's claim was supported by "adequate and full consideration," the Estate is necessarily entitled to the full deduction it seeks. Rather, the value of Chenchark's claim is a factual issue that precludes summary judgment. The value of the claim (and the corresponding allowable estate tax

deduction) remains for the district court to determine on remand. Whether her claim was worth $1 million (as it was eventually settled for) or some other amount is for the district court to decide. Under this court's precedent, the claim must be valued as of the date of Shapiro's death. *See Estate of Van Horne v. C.I.R.*, 720 F.2d 1114, 1116 (9th Cir. 1983); *Propstra v. United States*, 680 F.2d 1248, 1254 (9th Cir. 1982). For this reason, Chenchark's deposition testimony from this case—as quoted by our dissenting colleague—is irrelevant to the valuation of her claim. Chenchark's statements were not made until 2007, more than seven years after Shapiro's death. All that was known at the time of Shapiro's death was that Chenchark had asserted a plausible claim under Nevada law.

## C.  Judicial Estoppel

In addition to holding that the Estate could not deduct any amount for Chenchark's claim because of the lack of consideration, the district court also held that judicial estoppel prohibited the Estate from arguing that Chenchark's homemaking services provided consideration for the alleged agreement between Shapiro and Chenchark to share equally in each others' property. The district court specifically held:

> The application of judicial estoppel is appropriate in this case. The Estate is barred from taking inconsistent positions in accordance with the doctrine of judicial estoppel. It cannot over-claim the value of the suit against it. The value is what it paid for suit in settlement, and no more.

**[7]** The Estate's positions in defending against Chenchark's lawsuit were not inconsistent with any positions it took before the district court in this case. *See Yanez v. United States*, 989 F.2d 323, 326-27. The Estate consistently took the position that a contract claim had in fact been asserted against it, a fact that no one denies. The Estate was within its rights to deduct the value of the yet-to-be-determined claim without

waiving the right to contest the validity of the claim in state court. *Cf.* Treas. Reg. § 20.2053-1(b)(3) (2000) ("An item may be entered on the return for deduction though its exact amount is not then known, provided it is ascertainable with reasonable certainty, and will be paid.").[1]

### D.  Notices of *Lis Pendens*

In granting the United States' motion for summary judgment, the district court did not address the Estate's claim that it was entitled to a refund as a result of the reduction in property value caused by the notices of *lis pendens* filed by Chenchark on a number of Shapiro's properties. But it entered judgment against the Estate on this claim, along with the rest of the case. On appeal, the Estate argues that the district court erred in granting summary judgment on this claim because it was not addressed in the summary judgment motions.

We affirm the district court's grant of summary judgment on the Estate's claim for a refund related to the notices of *lis pendens*. The Estate abandoned this claim by failing to raise it in opposition to the United States' motion for complete summary judgment. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.' ") (quoting *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)).

### E.  Administrative Expenses

As with the Estate's claim for a refund related to the

---

[1]The regulation in effect at the time of Shapiro's death required the Estate to value the claim as of the date of death, even if there were uncertainty about the amount. We note that in 2009, the regulations changed, requiring an estate to wait and see about the value of a contested, unliquidated claim. *See* Treas. Reg. § 20.2053-1(d) (as amended in 2009).

notices of *lis pendens*, the district court did not address the Estate's claim for a deduction of administrative expenses under § 2053(a)(1)(i). Also like the *lis pendens* claim, the Estate failed to raise this issue in opposition to the United States' motion for summary judgment. But the United States noted in its answering brief that it has no objection to a remand to allow the district court to address the deductibility of administrative expenses. Therefore we instruct the district court to address this issue on remand.

## III.   Conclusion

For the foregoing reasons, we REVERSE the district court's grant of summary judgment on the Estate's claim that it is entitled to deduct the value of Chenchark's claim; AFFIRM summary judgment on the Estate's claim for a refund arising out of the notices of *lis pendens* recorded on Shapiro's properties by Chenchark; and REMAND.

Each party shall bear its own costs on appeal.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

---

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's disposition of the *lis pendens* and administrative expenses issues. I therefore concur in Parts II.D and II.E of the majority opinion. *See* Maj. Op. at 2732-33. I disagree, however, with the majority's analysis and disposition of the primary issue in this appeal, the valuation of the Chenchark claim for federal estate tax purposes. I therefore respectfully dissent from Part II.B of the majority opinion.[1] *See* Maj. Op. at 2727-31.

---

[1]Because I would affirm the district court's disallowance of the Chenchark claim under 26 U.S.C. § 2053, I find it unnecessary to reach the judicial estoppel issue, discussed in Part II.C. *See* Maj. Op. at 2731-32.

The majority reverses the district court because its holding "was premised upon a misconstruction of Nevada law regarding contracts between cohabiting individuals . . . ." Maj. Op. at 2725. This case, however, does not turn on issues of state contract law, but on federal tax law, and the Estate has raised no genuine issue of material fact as to whether it has met the requirement of the relevant estate tax provision, *i.e.*, that the claim underlying its deduction be supported by full consideration in money's worth.[2]

The estate tax issue in this case is governed by 26 U.S.C. § 2053. Although the majority is correct that 26 U.S.C. § 2053(a) "allows a deduction for 'claims against the estate . . . as are allowable by the laws of the jurisdiction . . . under which the estate is being administered,' " Maj. Op. at 2727, a valid state law claim is a necessary condition for the deduction, but not necessarily a sufficient one. Section 2053 also requires that, to be deductible, claims "founded on a promise or agreement[ ] be limited to the extent that they were contracted . . . for an adequate and full consideration in money or money's worth[.]" 26 U.S.C. § 2053(c)(1)(A).[3] This requirement is not satisfied merely because a claim is "legally binding and enforceable against [an] estate" under state law. *Taft v. Comm'r*, 304 U.S. 351, 355 (1938); *see also United*

---

[2]The district court's supposed misconstruction of Nevada law is also immaterial. In the summary judgment context, our review is de novo and we "may affirm the district court's [grant of] summary judgment on any ground supported by the record." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). Accordingly, even assuming that the district court was mistaken in its construction of Nevada contract law, we are free to affirm on alternate grounds. *See, e.g.*, *Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010).

[3]To be deductible under § 2053, the claim supporting the deduction must also be "contracted bona fide." 26 U.S.C. § 2053(c)(1)(A). In this case, aside from the question of whether Chenchark's consideration would have supported a contract under Nevada Law (to say nothing of a deduction under § 2053), it is by no means clear that there was in fact a contract to support it. There is no need, however, to reach this issue for the reasons discussed herein.

*States v. Stapf,* 375 U.S. 118, 131 (1963) (A deduction for a claim against an estate "should not be predicated solely on the finding that a promise or claim is legally enforceable under the state laws governing the validity of contracts and wills."). We have gone so far as to state that "the existence of legal consideration according to local law is *immaterial*" for purposes of the estate tax. *Giannini v. Comm'r*, 148 F.2d 285, 287 (9th Cir. 1945) (emphasis added).[4]

---

[4]It is neither unusual nor unreasonable for federal tax law to diverge from state contract law in this regard, because the two bodies of law are concerned with protecting very different interests. Although state law often provides protections for unmarried individuals from their partners through contract, it does so in order to protect the reliance interests of individuals who expected their long-standing relationships would last and held their property in accordance with this reliance. *See, e.g.*, *W. States Constr. v. Michoff*, 840 P.2d 1220, 1224 (Nev. 1992) ("[T]his court must protect the reasonable expectations of unmarried cohabitants with respect to transactions concerning their property rights."). The estate tax, by contrast, is designed to prevent tax avoidance. *See, e.g., Bank of N.Y. v. United States*, 526 F.2d 1012, 1018 (3d Cir. 1975) (denying a deduction under § 2053 that may be enforceable under state law because it did not meet the requirements of federal law, even where there was no reason to suspect that the intent of a transaction "was to establish a situation permitting the evasion of estate taxes, [because] to sanction a deduction in this type of a case could encourage tax avoidance").

More specifically, it is not unreasonable to have different rules in the different contexts under the facts presented by this case. Cohabiting partners would not lose their protection from an inequitable allocation of property within their domestic relationships because of a failure of the estate tax to recognize a deduction for their property claims; fair collection of the estate tax is not hampered by the recognition that unmarried individuals need legal protection of the economic arrangements made within their domestic relationships.

Further, rightly or wrongly, as a policy choice of Congress the estate tax bestows special status on married couples that it does not bestow on unmarried couples. *See, e.g.*, 26 U.S.C. § 2032A(e)(2) ("The term 'member of the family' means, with respect to any individual, only— (A) an ancestor of such individual, (B) the spouse of such individual, (C) a lineal descendant of such individual, of such individual's spouse, or of a parent of such individual, or (D) the spouse of any lineal descendant described in subparagraph (C)."); § 2043(b) (providing that relinquishments of mari-

The statute's requirement that deductions based on promises or agreements be supported by full consideration in money's worth is based on a need to protect the estate tax. Without this limitation, there would be nothing to "prevent testators from depleting their estates by transforming bequests to the natural objects of their bounty into deductible claims." *Leopold v. United States*, 510 F.2d 617, 623 (9th Cir. 1975). Accordingly, any contract between a decedent and someone who would be a natural object of his or her bounty is viewed with suspicion, requiring exceptional circumstances to be treated as something other than "simply an agreement to make a testamentary disposition to persons who are the natural objects of one's bounty." *Id*.

Thus, as we have previously held in the context of deductions under § 2053:

> Under exceptional circumstances . . . it may be that a claim by someone who might otherwise inherit from the decedent should be deductible under section 2053. If the claim is not simply a subterfuge for a nondeductible legacy, *if the claim is supported by 'adequate and full consideration,' and if the consideration is a non-zero sum which augmented the decedent's estate*, then it would seem that the deduction should be allowed. Whether or not a particular claim is deductible, then, will depend on the facts in each case.

*Id.* at 623-24 (emphasis added) (ellipsis in the original) (quoting *Hartshorne v. Comm'r* (*In re Estate of Hartshorne*), 402

___

tal rights are not consideration "in money or money's worth" except for purposes of § 2053 where requirements of § 2516, which governs certain written divorce agreements, are met); § 2056(a) ("[T]he value of the taxable estate shall . . . be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse . . . .").

F.2d 592, 594-95 n.2 (2d Cir. 1968)).[5] Chenchark, as Shapiro's long-term romantic partner, is a natural object of Shapiro's bounty, who was provided for in his will.[6] Chenchark testified that her claim was based on Shapiro's promise that "if anything happened to him [she] would be taken care of." Accordingly, the test set forth in *Leopold* applies here.

As is clear from the text of § 2053(c)(1)(A) and our decision in *Leopold*, whether or not exceptional circumstances are otherwise presented here, the claim must still be supported by adequate and full consideration that is "a non-zero sum which augmented the decedent's estate." 510 F.2d at 624. The Estate has adduced no evidence to raise a genuine issue of material fact as to whether Chenchark provided full consideration that augmented Shapiro's estate.

As an initial matter, "money or money's worth" appears a number of times in the Internal Revenue Code and regulations, and is generally[7] defined by regulation as excluding

---

[5]In the specific context considered by *Leopold*, that of divorce agreements, the Tax Reform Act of 1984, § 425(a), Pub. L 98-369, 98 Stat. 494 (1984), appears to have supplanted the inquiry by amending 26 U.S.C. §§ 2043 & 2053 to allow the relinquishment of marital rights to qualify as consideration supporting deductions if certain criteria are met. *See* 26 U.S.C. §§ 2043(b)(2) & 2053(e); *see also* 26 U.S.C. § 2516. No authority, however, suggests that this has diminished the weight of the principles *Leopold* established beyond the limited context of written divorce agreements.

[6]Admittedly, Shapiro's provision for Chenchark in his will was not without limitation. Shapiro provided for a bequest of $50,000 for Chenchark in his will with the proviso that the gift would lapse if they were not residing together at the time of his death. As defendant and co-executor Steven R. Scow noted in a letter to Shapiro, however, although in Scow's opinion Chenchark had no legitimate claim to Shapiro's assets, "[s]ince she has lived with [Shapiro] for twenty years, it would be a nice gesture . . . to make some arrangement to put money in an account or trust to pay for support during her lifetime."

[7]On occasion, the limitation is not express, but the exclusion remains clear. *See, e.g.*, 26 C.F.R. § 20.2043-1(a) ("To constitute a bona fide sale

love and affection. *See, e.g.*, 26 C.F.R. § 25.2512-8 ("A consideration not reducible to a value in money or money's worth, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift."); 26 C.F.R. § 301.6323(h)-1(a)(3) ("Nor is love and affection, promise of marriage, or any other consideration not reducible to a money value a consideration in money or money's worth."); *see also Harris v. Comm'r*, 340 U.S. 106, 107-08 (1950) ("The federal estate tax and the federal gift tax . . . are construed *in pari materia*, since the purpose of the gift tax is to complement the estate tax by preventing tax-free depletion of the transferor's estate during his lifetime. Both the gift tax and the estate tax exclude transfers made for 'an adequate and full consideration in money or money's worth.' " (citation and footnotes omitted)). The Tax Court also has observed that love and affection do not constitute adequate consideration for tax purposes. *See, e.g.*, *Cavett v. Comm'r*, 79 T.C.M. (CCH) 1662, 2000 WL 287975, at *7 (2000) ("If the services to decedent sprang from love and affection, the services themselves are tantamount to an expression of love and affection, which cannot be reduced to money or money's worth."). Accordingly, any love and affection provided to Shapiro by Chenchark must not, and cannot, be treated as consideration for purposes of § 2053, even if it would support a contract under state law. "Nevada law regarding contracts between cohabiting individuals," Maj. Op. at 2725, is simply irrelevant to determining the adequacy of consideration under § 2053.

While some of the above-cited authorities appear to suggest that, where the motivation for services provided was love and

for an adequate and full consideration in money or money's worth, the transfer must have been made in good faith, and the price must have been an adequate and full equivalent reducible to a money value. If the price was less than such a consideration, only the excess of the fair market value of the property . . . over the price received by the decedent is included in ascertaining the value of his gross estate.").

affection, the entire value of the services are discounted for tax purposes *even if* they had monetary value, there is no reason to decide that issue in this case. Even assuming that anything Chenchark provided to Shapiro out of love and affection would support a deduction of its full dollar value, the Estate has presented no evidence here that would create a genuine issue of material fact that Chenchark enhanced the value of the Estate in money's worth. Although there is evidence that Chenchark supervised Shapiro's household staff, including a maid, gardener, and a pool man, and that she cooked, cleaned, and provided emotional support to Shapiro,[8] the Estate presented no evidence that these services have a cash value or what that cash value would be.

Further, the Estate did not controvert the government's statement in support of its motion for summary judgment that "[d]uring the entire time Chenchark lived with Shapiro, she . . . never contributed any money or other assets of any material value to the relationship." Perhaps more importantly, the Estate itself represented that Chenchark gave nothing of monetary value to the relationship. It represented that Chenchark "was supportive of [Shapiro] emotionally, and supportive of him in the business matters . . . which he sometimes discussed with her. Their association was . . . an intimate, personal association where they shared their lives, hopes and dreams. [Chenchark] gave no physical asset except herself to the relationship . . . ." Further, Shapiro averred before his death that Chenchark "ha[d] never contributed anything to the acquisition or maintenance of any of [his] properties," and Steven R. Scow, one of the co-executors of the Estate, testified that there was no agreement between Shapiro and Chenchark to pool their assets.

Thus, the Estate has not raised a genuine issue of material fact to support its contention that Chenchark's claim against

---

[8] I note, however, that Chenchark stated in her deposition that "I didn't work in the home. I had a maid."

the Estate, assuming *arguendo* that it was contracted bona fide,[9] was supported by full consideration in money's worth for the purpose of federal tax law. Accordingly, I would affirm the district court on this issue.

For the foregoing reasons, I dissent from the majority's reversal of the district court's grant of summary judgment to the government on the Chenchark claim.

---

[9]*See* footnote 3, *supra*.